HOUGH-WYLIE COMPANY, A CORPORATION, v. W. C. LUCAS, PEARLIE M. LUCAS AND A. B. COX, T/A PIEDMONT TRUCKING COMPANY, A PARTNERSHIP, JOE CAGLE AND DON ALEXANDER, INDIVIDUALLY, AND PIEDMONT-CAROLINA LINES, INC.

(Filed 22 August, 1952.)

**Carriers § 11 ½ —**

A lease of intrastate motor vehicle common-carrier operating rights, approved by the Utilities Commission, does not release lessor, the holder of the certificate of convenience and necessity, from liability for non-performance of franchise duties or torts incident to operation, and a shipper may hold lessor liable for lessee's failure to make prompt remittance of C.O.D. collections as required by G.S. 62-121.37. In the instant case the Utilities Commission, in approving the lease, did not attempt to relieve lessors of such obligations, nor would it have the power to do so. G.S. 62-121.26.

APPEAL by defendants W. C. Lucas, Pearlie M. Lucas, and A. B. Cox, trading as Piedmont Trucking Company, from *Patton, Special Judge,* November Extra Civil Term, 1951, of MECKLENBURG.

Civil action by plaintiff shipper against W. C. Lucas, Pearlie M. Lucas, and A. B. Cox, trading as Piedmont Trucking Company, as holders of intrastate motor vehicle common-carrier certificate of convenience and necessity, hereinafter referred to as lessors; and Piedmont-Carolina Lines, Inc., lessee of the operating rights evidenced by the certificate of convenience and necessity, hereinafter referred to as lessee, Joe Cagle and Don Alexander, principal officers of the lessee corporation.

The action arises out of the alleged failure of the lessee operating company to remit to the plaintiff shipper certain moneys collected by the lessee in making deliveries of goods shipped C.O.D. by the plaintiff, heard below on demurrer of the lessors for failure to state facts sufficient to constitute a cause of action as to them. G.S. 1-127.

The allegations of the complaint, pertinent to decision, are in substance as follows:

1. The lessors, at the times mentioned in the complaint, "were the holders of a Common Carrier Certificate issued by the North Carolina Utilities Commission (hereinafter referred to as the Utilities Commission) . . . by which" the lessors "were authorized to transport general commodities over certain regular routes."

2. "That by written lease dated April 17, 1948, the common-carrier rights referred to above were leased" by the lessors to the lessee corporation "for a period of five (5) years for a consideration of $150.00 per month."

3. That upon application of the lessors, "the North Carolina Utilities Commission, on July 12, 1948, was induced to approve the lease of said common carrier franchise rights to" the lessee corporation.

4. That the lessee operated under the operating rights of the lessors from the date of the lease until 31 December, 1950.

5. "That by accepting the lease of the franchise rights of" the lessors, the defendant lessee corporation "became bound to abide by all the statutory provisions applicable to the holders of such intrastate franchise, among them, the obligation to hold in trust, remittances received from C.O.D. collections as required by G.S. 62-121.37 and to remit said collections to the shipper within ten (10) days of receipt by the carrier, as required by the rules of the North Carolina Utilities Commission."

6. "That on June 26, 1950, October 26, 1950 and November 14, 1950" the lessee corporation "was required to appear before the North Carolina Utilities Commission on account of its failure to discharge its duty as a common carrier in respect to the segregation and prompt remittance of C.O.D. collections, for the issuance of worthless checks in payment of debts and claims arising out of the operating authority issued by the Commission, and for the mismanagement of the transportation business authorized by the Commission in a manner unworthy of the trust and confidence of the shipping public; that the lessors, . . . were given notice and made parties in said proceeding as owners of the franchise rights involved."

7. That between 6 September and 1 December, 1950, inclusive, the plaintiff shipped from its place of business in Charlotte, N. C., three shipments of merchandise to customers in Robbins and Asheboro, North Carolina, each shipment being over the line operated by the lessee, with waybills being marked C.O.D. and requiring the carrier to collect from the consignees on delivery the respective sums of $185.25, $763.58, and $1,157.54.

8. That the lessee corporation delivered these shipments to, and received payment in full from, each of the consignees, but failed to "handle

the money so received as a trust fund, but on the contrary, diverted it to some other use unknown to this plaintiff."

9. That the lessee has not remitted any of the collections to the plaintiff "although often requested to do so, and is indebted to plaintiff" in the full amount thereof, to wit: $2,106.37.

10. That in making each of the specified shipments, the defendant lessee "exercised the franchise rights issued to defendant" lessors and leased by them to the lessee corporation.

11. That the defendants Joe Cagle and Don Alexander, principal officers in active control of the lessee corporation, "in disregard of their obligation to treat C.O.D. collections as trust funds, and after having been specifically warned and instructed in regard to such collections by the Utilities Commission, and in violation of G.S. 62-121.37, did receive C.O.D. collections from the shipments above specified, did fail to handle said receipts as trust funds, but on the contrary, did misappropriate and misuse said funds and apply them to unlawful purposes, to the detriment of this plaintiff."

12. "That on the 14th day of December, 1950, the North Carolina Utilities Commission revoked and set aside, effective on and after December 31, 1950, any and all operations by" the lessee "under any authority granted it or approved by the Commission, and directed" the lessors "to immediately take appropriate action to safeguard the interests of the creditors and claimants with respect to any debts and claims against" the lessee operating corporation.

13. That the lessors "leased their common carrier franchise rights to a lessee managed by incompetent and irresponsible persons, and . . . failed to properly supervise the operation of their lease, even after the defalcations of said lessee had been called to their attention, and . . . failed to take adequate steps to safeguard the plaintiff and other users of the facilities operated by the defendants, pursuant to a franchise issued to" the lessors.

14. That the lessors "of the franchise rights conferred by common-carrier certificate C-9, are liable to plaintiff for damage sustained by plaintiff as a result of the wrongful acts and omission of their lessee and its agents."

From judgment overruling the demurrer, the lessor defendants excepted and appealed, assigning error.

*Taliaferro, Clarkson & Grier for plaintiff, appellee.*
*Miller & Moser for defendants, appellants.*

JOHNSON, J.   The demurrer filed by the lessors presents for decision the question whether a lease of intrastate motor vehicle common-carrier

operating rights, approved by the Utilities Commission, releases the lessors, holders of the certificate of convenience and necessity, from liability for the nonperformance of franchise duties or torts incident to operations.

Decision turns in large part on construction and application of the provisions of Chapter 1008, Sessions Laws of 1947, codified as G.S. 62-121.5 through 62-121.42, known as the North Carolina Truck Act, hereinafter referred to as the Truck Act.

Subject to prescribed limitations, this Act empowers the Utilities Commission to grant to qualified applicants certificates of convenience and necessity to engage in the business of transporting property in intrastate commerce on the public highways of this State (G.S. 62-121.10, 62-121.11, and 62-121.13), and, subject to certain specified exceptions, the Act provides that no person shall engage in intrastate transportation of property by motor vehicle "until and unless such person shall have applied to and obtained from the Commission a certificate or permit authorizing such operation . . ." G.S. 62-121.15.

A certificate so issued by the Utilities Commission to a common carrier confers upon the holder the right and authority to operate on the routes and in the areas designated in the certificate. G.S. 62-121.16. It also confers upon the holder the protective benefits of the elimination of unauthorized competition and the prevention of infringement upon the operating rights granted by the certificates. See G.S. 62-121.9, 62-121.27, and 62-121.34.

However, the Act also provides that "there shall, at the time of issuance and from time to time thereafter, be attached to the privilege granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time require, . . ." G.S. 62-121.16.

It follows, then, that inherent in the acceptance of a certificate and the exercise of the rights and privileges evidenced thereby, is the correlative obligation to serve the shipping public faithfully in accordance with reasonable rules and regulations prescribed by the Utilities Commission (G.S. 62-121.6, 62-121.9, and 62-121.16) and in conformity with the requirements of other provisions of the Truck Act prescribing duties to be performed by the carrier for the protection of the shipping public, among which is the requirement that all C.O.D. moneys collected by a motor carrier shall be held in trust, for prompt remittance to the shipper as required by G.S. 62-121.37, which is in part as follows: "Property received by any motor carrier to be transported in intrastate commerce and delivered upon collection on such delivery and remittance to the shipper of the sum of money stated in the shipping instructions to be collected and remitted to the shipper, and the money collected upon deliv-

ery of such party, is hereby declared to be held in trust by any carrier having possession thereof or the carrier making the delivery or collection, . . ."

Manifestly, then, so long as the holder of a certificate of convenience and necessity continues to enjoy the benefits of the operating rights evidenced by the certificate, such holder may not by lease or other device escape the obligation of performing faithfully the correlative duties due the public or evade liability for nonperformance.

True, it appears from the complaint in the instant case that the lease of the operating rights was approved by the Utilities Commission as required by the provisions of G.S. 62-121.26. But this statute does not confer upon the Utilities Commission the power to release the holder of a certificate of convenience and necessity from liability for the nonperformance of public duties incident to the certificate. And the Commission possesses no such power in the absence of a delegation thereof by the Legislature.

Besides, it does not appear that the Utilities Commission in approving the lease attempted to release the lessors from such liability, nor does it appear that the lessors sought release or expected to be released. On the contrary, it affirmatively appears from the complaint that the Commission contemplated that the holders of the certificate should remain liable for the nonperformance of the franchise duties owed the shipping public.

We conclude, therefore, that the public policy of this State, as expressed in the Truck Act, will not permit one to acquire from the Utilities Commission a franchise to operate as such common carrier and then, while enjoying the benefits thereof, absolve himself from liability for the nonperformance of the public duties incident to the franchise by lease of operating rights.

Thus, taking the complaint as true, as is the rule on demurrer, the lessor-holders of the certificate of convenience and necessity are liable and answerable jointly with the lessee-operator to the plaintiff shipper for losses sustained by reason of wrongful conversion of C.O.D. moneys collected by the lessee-operator company.

While this precise question does not appear to have been presented heretofore to this Court for determination, decision here reached is supported in principle by well-considered decisions of other courts of last resort. *Moody v. Coach Corp.*, 248 Ky. 180, 58 S.W. 2d 375; *Swallow Coach Lines v. Cosgrove*, 214 Ind. 532, 15 N.E. 2d 92; *Emerson v. Park* (Texas Civ. App.), 84 S.W. 2d 1100; *Frank Martz Coach Co. v. Hudson Bus Transp. Co.*, 133 N.J.L. 342, 44 A. 2d 488. See also: Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., Vol. 1, Part 2, Sec. 491, p. 299, and Vol. 4, Part 1, Sec. 2155, pp. 86 and 87; *Aetna Casualty & Surety Co. v. Prather*, 59 Ga. A. 797, 2 S.E. 2d 115; *Dixie*

*Stage Lines v. Anderson,* 222 Ala. 673, 134 So. 23; *Attorney General ex rel. Corporation Com'r. v. Haverhill Gas-Light Co.,* 215 Mass. 394, 101 N.E. 1061; 60 C.J.S., Motor Vehicles, Sec. 84 (b), pp. 268 and 269, and Sec. 84 (c), p. 273; 23 Am. Jur., Franchises, Sections 6 and 33.

Decision here reached is also in accord with the policy and principles of our law as applied to common carriers by rail. Our decisions hold— and they are in accord with the overwhelming weight of authority else-where—that a common carrier by rail may not, without explicit governmental sanction, divest itself of liability for violations of contracts or of its general duty to the public, or for torts incident to operation of the road, by leasing it to another. *Aycock v. R. R.,* 89 N.C. 321; *Logan v. R. R.,* 116 N.C. 940, p. 947, 21 S.E. 959; *Pierce v. R. R.,* 124 N.C. 83, p. 93, 32 S.E. 399. *Cf. Phelps v. Windsor Steamboat Co.,* 131 N.C. 12, 42 S.E. 335.

In *Aycock v. R. R., supra,* with *Smith, C. J.,* speaking for the Court, it is said: "The defendant company, leasing the use of its road or permitting the use of it by another company, remains liable for the consequences of the mismanagement of the train in charge of the servants of the latter, and the injury thence resulting, to the same extent as if such mismanagement was the act or neglect of its own servants operating its own train."

In *Logan v. R. R., supra,* it is stated: "The lessor company remains liable for the performance of its public duties to private parties for the non-delivery of goods received by it for delivery, and for all acts done by the lessee in the operation of the road, notwithstanding the lease is authorized by the lessor's charter . . . No matter how many leases and subleases may be made, the law attaches to the actual exercise of the privilege of carrying passengers and freight the compensatory obligation to the public to use ordinary care for the safety of both persons and property so transported. . . . On the other hand the carrier, who simply substitutes, with the consent of the State, another in his place, cannot establish his own right of exemption from responsibility for the wrongs of the substitute unless he can show, not only explicit authority to lease the property, but to rid itself of such responsibility."

We have not overlooked the decision in *Anthony v. Express Co.,* 188 N.C. 407, 124 S.E. 753, cited and relied upon by the appellants. In that case it is held that no common law duty devolves upon a common carrier to act as the collecting agent of the shipper in respect to money collected on a C.O.D. shipment, and that therefore the obligation of the carrier to collect and remit rests entirely on contract, express or implied, between the shipper and the carrier. Thus on the basis of the rule applied in the *Anthony case,* the appellants insist that in the absence of contractual privity between the shipper and the lessors, the latter may not be held

answerable for the alleged default of the lessee operating company in failing to remit C.O.D. moneys due the plaintiff shipper.

However, the rule applied in *Anthony v. Express Co., supra,* is inapplicable here, for the reason that the express provisions of the Truck Act enjoins upon motor carriers the duty and obligation to hold in trust and faithfully remit to the shipper the proceeds of C.O.D. shipments. G.S. 62-121.37. And this duty, by virtue of another section of the Truck Act, being "attached to the privilege granted by the certificate" (G.S. 62-121.16), may not be separated therefrom by the expedient of a lease of operating rights.

The judgment below is
Affirmed.