No. 40,019

Merritt M. Young, doing business as Youngs Wholesale, *Appellant*, v. The Santa Fe Trail Transportation Company, *Appellee*.

(298 P. 2d 235)

Opinion filed June 9, 1956.

*Clifford L. Malone*, of Wichita, argued the cause, and *Mark H. Adams, Charles E. Jones, William I. Robinson, J. Ashford Manka*, and *Oliver A. Witterman*, all of Wichita, were with him on the briefs for the appellant.

*J. B. Reeves*, of Topeka, argued the cause, and *C. J. Putt, W. E. Treadway*, and *Edwin M. Wheeler*, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from the trial court's judgment holding that an initial common carrier was not liable to the shipper for moneys collected from the consignees on five C. O. D. shipments which moneys were converted by a delivering common carrier.

Briefly summarized, the stipulated facts were that appellant, Merritt M. Young, had his place of business in Wichita and appellee was a common carrier incorporated under the laws of the state of Kansas. During November and December, 1953, appellant delivered to appellee at its Wichita freight station five C. O. D. intrastate shipments totaling $843.05 in value. Four of the shipments were addressed to a consignee at LaCrosse and the fifth to a consignee at Utica. Appellee's authority under its published tariffs filed with the state corporation commission (hereinafter called the commission) did not extend to LaCrosse and Utica but went only as near thereto as Great Bend. For delivery to the consignees the shipments were delivered to Kenneth W. Kerbs, Sr., doing business as the Midwest Truck Line, as interlining and delivering carrier. Kenneth W. Kerbs, Sr., delivered the shipments, collected the C. O. D. moneys and converted them to his own use. He subsequently was discharged in bankruptcy on June 18, 1954. On February 10, 1954, appellant made demand on appellee for the total of the C. O. D. amounts, which demand was refused. Neither appellant nor appellee ever received any money from the shipments.

The stipulation further provided that at all times material rule 82-4-49 of the commission was duly on file in the office of the revisor of statutes as required by article 4, chapter 77, laws 1949, and was in full force and effect.

In his petition appellant substantially alleged, in addition to a more elaborate statement of part of the facts gleaned from the above stipulation, that appellee selected an agent (Midwest Truck Lines, Kenneth W. Kerbs, Sr.) to deliver to and collect from the consignees which, in connection with the conversion of the proceeds, amounted to a misdelivery and conversion of the property by appellee, or its agent, in violation of the terms and conditions of the bills of lading, which made appellee liable for the value of the property after demand by appellant and refusal by appellee. He cited G. S. 1949, 66-304; 66-305; 66-306; 66-307 as authority for this allegation and further claimed attorney fees under G. S. 1949, 66-305.

In its answer appellee alleged supplementally to part of the stipulated facts and, in substance, alleged that the interlining of the named carriers for delivery of the five shipments under the bills of lading was authorized by tariffs on file with the commission; that Midwest Truck Lines (Kenneth W. Kerbs, Sr.) was not the agent of appellee and that the duty of collecting and remitting the C. O. D. charges was that of the delivering and not the originating carrier. Appellee denied that the C. O. D. stamped on the bills of lading became a part and parcel of the shipping contract. It was further alleged by appellee that collecting on delivery is a service authorized by the commission and under our statutes that service is not a part or parcel of a shipping contract or bill of lading.

Appellant sued appellee for the C. O. D. moneys. The case was submitted on the above stipulation of facts and the pleadings heretofore summarized. The trial court held that appellee was not liable and this appeal followed.

Statutes and parts thereof pertinent to this matter are as follows:

G. S. 1949, 66-1,112 grants the commission the power and duty to regulate every public motor carrier of property in the state in all matters affecting the relationship between such carriers and the shipping public.

G. S. 1949, 66-304 provides that any common carrier receiving property in intrastate shipment shall issue a receipt or bill of lading and such initial common carrier or any other common carrier to which said property may be delivered or over whose line such property may pass shall be liable to the owner for *any loss,* damage or injury caused by any one of said carriers, and no contract, *rule,* or regulation shall exempt any of such carriers from the liability thereby imposed.

G. S. 1949, 77-109 provides that the common-law rule that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute but all such statutes shall be liberally construed to promote their object.

G. S. 1949, 77-405 provides the definition of "regulation" to mean any rule or regulation made by any state agency. G. S. 1949, 77-406 in turn provides for filing of such regulation and, finally, G. S. 1949, 77-413 provides that any regulation not filed as required shall be of no force and effect.

We come next to the rule mentioned in the stipulation which had been filed by the commission as required by the above statutes and

was in effect at all times material herein. It reads, in part, as follows:

## "Rule 82-4-49

### "C. O. D. SHIPMENTS

"In the case of C. O. D. shipments handled by common motor carriers, the full amount due the consignor, as shown by bills of lading or papers attached thereto, shall be collected at the time the shipment is delivered . . . Remittance of the amount so collected shall be made by the delivering carrier direct to the consignor as soon as good and efficient handling and bookkeeping methods will permit . . .

"In cases where more than one carrier is involved in the handling of C. O. D. shipments, the delivering carrier is responsible for the collection from the consignee and remitting to the consignor of all amounts due, and so notifying other carriers involved, if any."

The first and vital question involved in this appeal is whether the trial court erred in holding, as a matter of law, that under the aforesaid pleadings and stipulation of facts the initial common carrier was not liable to the shipper, or consignor.

As a general rule, the common practice of shipping goods collect on delivery (C. O. D.) to a buyer instructs the carrier not to deliver the goods until the price has been collected. Thus there is created a special service outside the scope of the common carrier's public service duty so that liability for such service rests upon a contractual basis. A strictly correct minority view treats the carrier as having extended its public service undertaking to that type of traffic when, absent a special contract, it customarily accepts such shipments. (4 Williston on Contracts, rev. ed., § 1107A, p. 3136-3138.)

In our case the bills of lading were issued by appellee and the goods were accepted by it to be transported as a C. O. D. shipment. Appellee was therefore bound to collect the amount due and return the proceeds to the shipper. Delivery of goods without receiving payment, or if remittance is held up so that the consignee may garnish such proceeds, makes the carrier liable to the consignor therefor. (13 C. J. S., Carriers, § 186 (*a*) (*b*).)

Our statutes, previously stated in substance, use plain and unambiguous language and are appropriate for their obvious purpose. We are not warranted in looking beyond them in search of some other legislative purpose. (*Alter v. Johnson*, 127 Kan. 443, 273 Pac. 474.) There can be no doubt that G. S. 1949, 66-304 makes all interlining carriers liable for *any loss* to an owner of property shipped

after it has been delivered to and accepted by the initial carrier for such transportation as is involved in the case at bar.

Appellee makes quite a point of the rule of the commission and particularly the last paragraph thereof and relies heavily thereon for its contention that only the delivering carrier is liable in this case for the C. O. D. moneys collected. This is questionable reasoning because it is axiomatic that the initial and receiving carrier is the one who makes the contract with the shipper that the shipment will not be delivered until the C. O. D. money is collected. Here we may pause to say that we are not unmindful of exceptions to this rule but none of those is present here. Continuing, we are aware that a carrier does not have to accept C. O. D. shipments. This general rule was first applicable to express companies, then to railroads, and now to automobile or motor common carriers within the confines of the facts of our present case. While under the general rule there may be two contracts involved, in this case both parties must, and do admit, that the commission has seen fit to make our rule otherwise. It likewise must be conceded that such rules are made for the benefit of the shipping public and that the carriers make an extra rate charge for such service. Therefore, it is inescapable that such contracts must be considered as part of the shipping contract. While there are some analogous situations which might be set out, we do not feel it necessary to analyze and discuss them here since they are not applicable to the facts in this record.

Proceeding further, the rulings of the commission have the above result because the commission's rulings, the same as the appropriate statutes, must be liberally construed in favor of the shipping public. To this effect is the opinion in *Birggs v. Burk*, 172 Kan. 375, 239 P. 2d 981, wherein the Honorable W. W. Harvey, former Chief Justice, made an exhaustive study of statutes and rules of the state corporation commission thereunder and while the subject was quite different from the case at bar, the rulings in that opinion are generally applicable to motor common carriers.

Turning again to our case, the final paragraph of the commission's rule merely expedites the payment to the shipper of the C. O. D. moneys. Were this not so, the rule would be a limitation and contravention of the statute and would not be within the power of the commission to make. It is only natural that the delivering carrier is responsible for the collection of the C. O. D. moneys since it is the only one of the interlining carriers that contacts the consignee.

The last words in the rule, which read, ". . . and so notifying other carriers involved, if any," are clear and unambiguous and were used by the commission to avoid any such result as is claimed by appellee here to the effect that this rule makes only the delivering carrier liable. In connection with, and as a basis for, the above reasoning, reference is made to some authorities from jurisdictions other than our own: *Anthony v. Express Co.,* 188 N. C. 407, 124 S. E. 753, 36 A. L. R. 460, anno. 464; *Mogul, Inc., v. Lavine, Inc.,* 247 N. Y. 20, 159 N. E. 708, 57 A. L. R. 934, anno. 937; *Hough-Wylie Co. v. Lucas,* 236 N. C. 90, 72 S. E. 2d 11, 34 A. L. R. 2d 1115, anno. 1121.

Finally, appellant claims that under G. S. 1949, 66-305 he is entitled to have an attorney's fee in a reasonable amount fixed by the trial court. We agree.

The judgment of the trial court is reversed with directions to enter judgment in accordance with the views set out in this opinion and, in addition thereto, that court should determine and allow a reasonable attorney's fee to appellant.