LEE MONROE, *Appellee*, v. A. C. LONGREN et al. (PHILLIP BILLARD, *Appellant*).

No. 17,567.

SYLLABUS BY THE COURT.

TORT—*Wrongful Taking of Automobile—Tort Feasors—Damages.* Appellant was sued jointly with others, charged with the wrongful taking of plaintiff's automobile from a garage where it had been stored, and recklessly driving the same, by which it was damaged. It appeared from the evidence and findings that he aided, encouraged and participated knowingly in the wrongful taking and wrongful use of the machine. *Held,* appellant is liable as a joint tort-feasor for the damages sustained by the owner.

Appeal from Shawnee district court. Opinion filed June 8, 1912. Affirmed.

*N. B. Arnold,* for the appellant.
*W. S. Roark,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: Monroe, as plaintiff, sued the defendants for taking, without his knowledge or consent, a valuable motor car belonging to him from a public garage in Topeka where it was stored, and recklessly driving

it in such a manner as to cause it to be overturned and damaged. He recovered judgment against the defendants. Phillip Billard appeals.

The evidence was that Billard, on the night of the accident, drove his own car into the country, taking with him George Rutter and a young man by the name of Maginnis. They stopped at a farmhouse several miles from town and persuaded a man named McCauley, who was a mutual friend of Billard and Maginnis, but who was a stranger to Rutter, to go with them for a pleasure ride. Billard brought the party in his car to Topeka, promising McCauley to take him home. He drove to the garage for the purpose of procuring a supply of gasoline, and discovered that one of the tires of his car was split. He made the remark that they would not be able to get McCauley home without changing tires. Rutter then said "We will take my car," referring to plaintiff's car, which had been left at the garage with explicit instructions that it was not to be taken out except upon the order of plaintiff or his wife. Rutter had been hired occasionally by plaintiff as a chauffer, but was not regularly employed. Rutter and Billard had a conversation apart from the others, and with the man in charge of the garage, after which Rutter lighted the lamps on plaintiff's car and ran it out. Billard got in the front seat and sat with him. They started sometime about midnight to take McCauley home. Before they left the garage Billard went out and procured sandwiches and beer for the party. While Rutter was driving the car at a high speed on a country road the accident occurred in which the car was overturned and wrecked.

The plaintiff testified that Billard admitted to him the next day that he knew whose machine it was, and that it did not belong to Rutter. The car, which was comparatively new, cost originally $3000, and the plaintiff was put to the expense of $700 for repairs. The

jury allowed him $1000 damages. With the general verdict they returned the following special findings:

"1. Was plaintiff's automobile being used for the purpose of returning John McCauley to his home at the time it was injured? Answer. Yes.

"2. If your answer to the preceding question is in the affirmative, state whether John McCauley was being taken to his home in said automobile pursuant to an agreement previously made by the defendant, Billard, that he would be returned to his home by automobile? Answer. Yes.

"3. Did the defendant, Billard, know that the automobile in question belonged to the plaintiff at the time he and his companions started with it, on the trip to take McCauley home? Answer. Yes.

"4. Did he offer any objection to the use of said automobile for making said trip? Answer. No.

"5. Did the defendant, Billard, honestly believe at the time he started on the trip with plaintiff's automobile that the defendant had the right to use said automobile for said trip? Answer. No.

"6. Was the injury to plaintiff's automobile caused by negligence on the part of the driver? Answer. Yes.

Complaint is made of error in overruling a demurrer to the evidence, error in the instructions, and in overruling a motion for a new trial. The first contention is that the evidence shows that Rutter was the chauffer of the plaintiff, that this was generally known, and that Billard had the right to presume that Rutter had authority to take the car; that there is no evidence that Billard knew of the orders to the garage man not to allow the car to be taken except when ordered by the plaintiff. It is argued that there is an entire lack of evidence that Billard had any part in the wrongful taking. He knew, however, that it was an expensive machine, that it did not belong to Rutter, that it belonged to the plaintiff, and he must have known that the plaintiff would not have approved the taking of the car for such a purpose after midnight and before daylight by a party composed of reckless young men, some of them, as the evidence shows, under the in-

fluence of liquor.    He aided, encouraged, and abetted
the wrongful taking of the car, participated knowingly
in its wrongful use, and under the evidence and findings,
was liable as a joint tort-feasor for any damages caused
to the owner.

"All who aid, command, advise, or countenance the
commission of a *tort* by another, or who approve of it
after it is done, if done for their benefit, are liable in
the same manner as they would be if they had done
the same *tort* with their own hands."    (*Moir v. Hop-
kins*, 16 Ill. 313, 315, 63 Am. Dec. 312; 38 Cyc. 485,
1160; 1 Cooley on Torts, 3d ed., p. 244; Bishop on Non-
Contract Law, §§ 521, 522.)

The findings are in effect that Billard joined in the
use of the car for the purpose of taking McCauley
home as he agreed to do.

The court gave an instruction to the effect that if Rut-
ter agreed to drive plaintiff's car for the purpose of tak-
ing McCauley home, pursuant to Billard's agreement to
see that he was taken home, and that Billard assented to
the arrangement knowing that the car did not belong
to Rutter, he would be liable for damages to the car
occasioned by Rutter's negligence even though he did
not know that Rutter had no right to use the car for
such purpose, because under the circumstances Rutter
would be deemed the servant of Billard while making
the trip.

We think the instruction should not have been given,
and that the negligence of a servant imputed to the
master had no application to the facts as shown in the
evidence.    But the instruction was harmless error be-
cause the jury have specially found that Billard did
not honestly believe that Rutter had the right to use
the machine, and the testimony of the plaintiff as to
Billard's admission sustains the finding.    Billard re-
quested the court to charge that in order to hold him
liable the jury must find that he wrongfully and un-
lawfully took the car from the garage or that he wrong-

fully and knowingly aided and assisted in so doing. The instruction is faulty because he would be liable if the wrongful taking was partly for his benefit and he assented thereto, or if he encouraged and participated therein.

Upon the findings, which appear to be supported by the evidence, the judgment must be affirmed.