No. 45,033

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, *Appellee,* v. KIRK PRESTON GRIM, *Appellant.*

(440 P. 2d 621)

Opinion filed May 11, 1968.

*William R. Smith,* of Wichita, argued the cause, and *A. W. Hershberger, Richard Jones, H. E. Jones, Jerome E. Jones, Robert J. Roth, Robert J. O'Connor,* and *Greer Gsell,* of Wichita, were with him on the brief for the appellant.

*John Prather,* of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson, David W. Buxton, John T. Conlee, Richard I. Stephenson,* and *Douglas D. Johnson,* of Wichita, were with him on the brief for the appellee. *Hugo T. Wedell,* of Wichita, of counsel.

The opinion of the court was delivered by

O'CONNOR, J.: This is a subrogation action by the American Family Mutual Insurance Company (plaintiff) to recover from a thirteen-year-old boy (defendant) a portion of a fire loss paid to the Derby Methodist Church, the company's insured, as the result of a fire occurring August 16, 1965. Following a trial without a jury, the lower court entered judgment in favor of the insurance company, and defendant has appealed.

The issues raised on appeal relate to the sufficiency of the evidence and the liability of the defendant as a joint tort-feasor.

On the evening of August 15, 1965, the defendant and three companions, ages thirteen and fourteen, gathered at the home of one of the boys to spend the night. They planned to sleep in the backyard in sleeping bags, as they had done several times previously during the summer. About ten o'clock the four lads decided to go downtown to a filling station to get some Cokes. They left the yard through a back gate and proceeded down the alley. The home was located about three houses south of the church, and as they passed the church, one of the boys remarked that Cokes were kept in a refrigerator in the kitchen and maybe they could get some there.

The boys entered the building through the unlocked door of the main entrance to the sanctuary, which is the east wing of the church. The kitchen is located in the north part of the west wing. Finding the doors to the kitchen locked, the boys attempted to find another way to gain entry via the attic and down through the kitchen ceiling. The four of them went through the sanctuary to a storeroom located behind the stage. The defendant remained in the storeroom while his three companions gained entry to the attic through a trap door in the ceiling. In the attic the trio's way was illuminated by one of the boys turning on a socket-type electric light that hung from one of the rafters. The wires to the socket were contained in a metal conduit pipe, and whenever one of the three youths touched the pipe, the light flickered off and on. When the boys discovered that a cement wall extended to the roof along the west side of the east wing, thus blocking their way into the west wing, they left the attic, turning off the light as they departed.

The defendant and his three companions then went back through the sanctuary, entered the west wing of the church by going down a hallway, and went into the furnace room located on the south

side of the west wing. From here two of the boys went up into the attic through a trap door that opened into the area above the hallway. The defendant and his other companion remained behind. Upon entering the attic, the two boys found some paper material which, without the defendant's knowledge, they rolled up, lighted with a match, and used as torches to light their way. Solid, masonry walls running the full length of the building and extending nearly to the roof divided the attic into three general areas: the center area above the hallway, an area to the north directly over the kitchen, and an area to the south over the furnace room. As the torches burned down during the search in the attic, the two boys extinguished one over the hallway area and the second over the area north of the hallway into which they had gained admittance through a small opening in the wall. One torch was extinguished by "stomping" it on a board lying across the rafters; the other burned rapidly and was permitted to fall between the rafters onto the ceiling. Having literally "run into a stone wall," the two youths, believing the torches to be fully extinguished, left the attic and descended to the furnace room. From the time the two boys entered the attic until they returned to the furnace room the defendant was in the hallway obtaining a drink at the water fountain. Upon returning to the furnace room, defendant found his three companions attempting to extinguish another torch which, in his absence, the third boy had lighted. The boys stamped the torch out on the floor and finally dumped the balance of it into a sink in the furnace room.

The four youths then left the church through the same door by which they had entered and proceeded to a filling station where they drank Cokes. After walking around for a while, they returned to their sleeping bags around midnight. A half hour later one of the boys heard a noise in the vicinity of the church. The four boys arose and observed a light burning in the church attic in the same area where the light they had used was located. They heard some talking, the hitting of a window of the church, and saw four or five boys run across the south side and around the southeast corner of the building.

In the early morning hours of August 16 the church was discovered to be on fire, and the local fire department was called to the scene. When the firemen arrived they found extensive fire, with smoke coming out from under the eaves of the building and through the roof at one point on the south side of the west wing. Defendant

and his three companions were awakened about 5:00 a. m. by the fire alarm activity and went over to the church to help remove Boy Scout equipment from a storage room located in the southeast corner of the east wing.

Although the chief of the local volunteer fire department was unable to determine the cause of the fire, he concluded the fire had originated on the south side of the south partition of the west wing near the furnace room and had been burning three or four hours at the time it was discovered.

The trial court found that the fire was started as a result of the torches, either one or both, that were lighted in the attic; that the cause of the fire was the lighting of the torches and the attempt to extinguish them; that defendant knew nothing about the lighting of the torches, but that he and the other three boys were in the church, and two of the boys were in the attic, for the purpose of attempting to find an entrance into the kitchen in order to get, or attempt to get, Cokes therefrom. The court concluded that defendant was jointly and severally liable, and entered judgment for the plaintiff insurance company in the sum of $25,000.

Defendant challenges the court's finding that the fire was caused by the torches. The gist of his argument is that its finding is not supported by substantial, competent evidence, in that inferences different from that reached by the trial court might have been drawn from the evidence. Defendant points out that other boys were later seen in the vicinity of the church, and that the electric light in the east wing apparently had a short circuit in its wiring—all of which tended to show other possible causes of the fire which the trial court erroneously disregarded. The fallacy of defendant's argument is that in order for circumstantial evidence to be sufficient to sustain a finding in a civil case, such evidence need not rise to that degree of certainty which will exclude any and every other reasonable conclusion. (*Casey v. Phillips Pipeline Co.,* 199 Kan. 538, 431 P. 2d 518; *Thomas v. Kansas City Southern Rly. Co.,* 197 Kan. 747, 421 P. 2d 51; *Sternbock v. Consolidated Gas Utilities Corp.,* 151 Kan. 81, 98 P. 2d 162; *Railway Co. v. Perry,* 65 Kan. 792, 70 Pac. 876.) It suffices that such evidence affords a basis for a reasonable inference by the court or jury of the occurrence of the fact in issue, although some other inference equally reasonable might be drawn therefrom. (*Virginia Surety Co. v. Schlegel,* 200 Kan. 64, 434 P. 2d 772; *Security Milling Co. v. Ketchum,* 185 Kan. 694, 347 P. 2d 433; *Briggs v. Burk,* 174 Kan. 440, 257 P. 2d 164.)

Causation, like any other fact question, may be shown by circumstantial evidence. (*Casey v. Phillips Pipeline Co.,* supra.) In the oft quoted case of *Railway Co. v. Perry,* supra, this court held:

"The fact that soon after the passing of an engine a fire starts near a railway-track in an enclosed field covered at the time with a growth of highly inflammable vegetation, and travels before a high wind in a direction away from the track, is sufficient to warrant a jury in finding that the fire was caused by the operation of the railroad, without its appearing that the engine emitted sparks or live cinders or was put to special exertion, and without further proof excluding other possible origins." (Syl. ¶ 1.)

The qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial judge. (*Howard v. Stoughton,* 199 Kan. 787, 433 P. 2d 567.) We have held that an expert may give his opinion about the origin of a fire, and the weight of such testimony is a matter for the consideration of the trier of fact. (*Virginia Surety Co. v. Schlegel,* supra.)

Although the fire chief voiced no opinion on the cause of the fire, there were several factors upon which he based his conclusion that the origin of the fire was in an area immediately adjacent to the furnace room on the south side of the south partition of the west wing. The damage was the most extensive in that particular area. It was the only place where any smoke was coming through the roof when the fire chief arrived, and it was the first place "any active fire below the ceiling level" was found. This evidence placed the origin of fire near the area where one of the torches was lighted and later extinguished. Defendant's argument that a masonry wall separated the two areas ignores the fact that none of the walls extended to the roof—there being a six- to eight-inch gap between the top of the wall and the roof. Clearly the fire was not confined within any particular walled area, for the fire chief found heavy damage over the entire south side of the sanctuary, or east wing of the church, as well as some damage over the north side of the west wing. From these circumstances the trial court could reasonably infer the fire was caused by one or both of the torches, and its finding will not be disturbed.

Defendant vigorously argues he cannot be held liable, either jointly or severally, for the damage caused by the fire. He observes there was no evidence his companions had any discussion with him about using torches and the trial court specifically found that he knew nothing about the lighting of the torches in the attic. Al-

though plaintiff's petition recites, "Defendant and three other persons engaged in a joint venture," it appears the case was actually tried and submitted without objection to the lower court on the theory that the four boys were jointly engaged in the commission of an unlawful tortious act—gaining entrance to the kitchen in order to obtain Cokes—and all were liable as joint tort-feasors for any wrongful act done in attempting to accomplish their objective. We, therefore, need not concern ourselves with defendant's principal argument that the negligence of the other boys cannot be imputed to him under the doctrine of joint enterprise or joint adventure frequently applied in automobile negligence cases.

One who aids, abets and encourages others in the commission of an unlawful act is guilty as a principal, and all are jointly and severally liable in a civil action for any damages that may have resulted from their act. (*Sharpe v. Williams*, 41 Kan. 56, 20 Pac. 497; *Monroe v. Longren*, 87 Kan. 342, 124 Pac. 367.) Defendant argues this rule does not apply, because he had nothing to do with the use of the torches, nor did he know they were being used. The weakness of his argument lies in defendant's disregard of the fact the torches were used in the four boys' attempt to carry out their original unlawful plan.

The rule of joint and several liability also prevails where tort-feasors act in concert in the execution of a common purpose. (52 Am. Jur., Torts § 111; 86 C. J. S., Torts § 34. Also, see, *Milwaukee Ins. Co. v. Gas Service Co.*, 185 Kan. 604, 347 P. 2d 394.) Particularly apropos to our factual situation is the principle of law stated in 52 Am. Jur., Torts § 116:

"The general rule is that two or more persons engaged in a common enterprise are jointly liable for wrongful acts done in connection with the enterprise, at least where the enterprise is an unlawful one, in which case all are answerable for any injury done by any one of them, although the damage done was greater than was foreseen, or the particular act done was not contemplated or intended by them. . . ."

(Also, see, 86 C. J. S., Torts § 37.) The foregoing rule has been recognized or applied in *Hood v. Evans*, 106 Ga. App. 360, 126 S. E. 2d 898; *Kuhn v. Bader*, 89 Ohio App. 203, 101 N. E. 2d 322; *Day v. Walton*, 199 Tenn. 10, 281 S. W. 2d 685; *Thompson v. Johnson* [5th Cir. 1950] 180 F. 2d 431.

The tort liability of persons acting in concert is expressed in 4 Restatement of the Law of Torts, § 876, p. 435:

"For harm resulting to a third person from the tortious conduct of another, a person is liable if he

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, . . ."

In the Institute's comment on clause (b) it is stated that if the encouragement or assistance referred to is a substantial factor in causing the resulting tort, the one giving it is himself a tort-feasor and is responsible for the consequences of the other's act. This is true both where the act done is an intended trespass and where it is merely a negligent act. More germane to our case is the further comment that a person who encourages another to commit a tortious act may also be responsible for other foreseeable acts done by such other person in connection with the intended act. To illustrate the point, the following example is given:

"A and B conspire to burglarize C's safe. B, who is the active burglar, after entering the house and without A's knowledge of his intention to do so, burns the house in order to conceal the burglary. A is liable to C, not only for the conversion of the contents of the safe, but also for the destruction of the house."

(4 Restatement of the Law of Torts, *supra,* Comment on Clause [b], p. 438.) A *fortiori,* the same result would obtain had B negligently set fire to the house while using a match or torch to find the safe.

Here, the boys entered the church for the common purpose of obtaining Cokes from the kitchen. Finding their way thwarted by the locked door, the boys sought a means of entry through the attic to an area over the kitchen where entrance could be accomplished through the ceiling. In their attempt to reach that area, the need for adequate lighting could reasonably be anticipated. The use of the torches served that purpose. From the time the boys entered the church to the time of departure, defendant was more than an innocent bystander. Although he actually did not enter the attic or have anything to do with the use of the torches, there was evidence from which it could be inferred that he actively participated and lent encouragement and cooperation to the successful accomplishment of their over-all mission. At no time did he make any attempt to withdraw from participation in the agreed-on objective or plan. In fact, it would appear he intended to reap the same benefits, once the mission was completed, as would be forthcoming to his companions.

A minor tort-feasor is answerable for damages caused by his

negligence, to the same extent as an adult (*Davidow v. Bold*, 143 Kan. 913, 57 P. 2d 100; *Baker v. Morris*, 33 Kan. 580, 7 Pac. 267), and the trial court correctly held the defendant was liable.

The judgment is affirmed.