**Melody RAMSEY, Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF DENVER; Manager of Public Works, Traffic Engineering Division, Defendants–Appellees.**

No. 86–2855.

United States Court of Appeals, Tenth Circuit.

July 9, 1990.

---

Sander N. Karp, Denver, Colo. (Shelley P. Dodge, Denver, Colo., was with him on the brief), for plaintiff-appellant.

Jeffrey Wasson, Asst. City Atty., Denver, Colo. (Stephen H. Kaplan, City Atty., and Ross P. Goldsmith, Asst. City Atty., Denver, Colo., were on the brief), for defendants-appellees.

Before HOLLOWAY, Chief Judge, and McWILLIAMS and TACHA, Circuit Judges.

HOLLOWAY, Chief Judge.

Plaintiff-appellant Melody Ramsey (Ramsey) appeals a district court judgment against her on all her claims following a bench trial in her suit alleging disparate treatment, sexual harassment, constructive discharge, and retaliation, all in violation of Title VII.[1] We affirm.

## I

## THE FACTUAL BACKGROUND

Ramsey is an engineer and a former employee of the City and County of Denver (City). She began work for the City in April 1984 and resigned in November 1984, asserting that she had been discriminated against on the basis of sex. She alleges first that she was treated differentially because of sex in four respects: she was kept on probationary status rather than being made a permanent employee; she received inadequate supervision; her work assignments were inappropriate; and she was improperly relieved of her supervisory duties after an incident with an employee.

Second, Ramsey claims hostile work environment sexual harassment; she points to comments, drawings, sexually-charged physical conduct, and publications found in the work area as the basis for this allegation. Third, Ramsey claims that she was constructively discharged from her position with the City because of her treatment. Finally, Ramsey claims that contact between City personnel and personnel at her current employer, the State of Colorado (State), in giving out information to State employees and obtaining subpoenas for them to testify in Career Service appeal proceedings, was retaliatory in violation of Title VII.

The City defends itself on several theories. First, it claims that Ramsey has only her own difficult personality to blame for her problems with co-workers and for the extension of her probation. Second, it argues that there was no discrimination against her, and that any differential treatment was in her favor. Third, the City denies that Ramsey was constructively discharged since Ramsey could have corrected the interpersonal problems which were at the base of her troubles and Ramsey actually left to take a position she sought with the State. Finally, the City says that there was no improper contact between City and State employees. It had every right to subpoena State employees in order to defend itself on Ramsey's Career Service appeal claims, which were pending with the City at the time; further, any information given out to State employees was public information, given at the request of State employees themselves.

## II

## THE DISTRICT COURT'S FINDINGS

In an unpublished Memorandum Opinion and Order, the district judge found that even where Ramsey had made a prima facie case of disparate treatment, the City had articulated legitimate nondiscriminatory reasons for its actions, and that Ramsey had failed to show that these reasons were mere pretext. Memorandum Opinion and Order at 3–11.

The court found that Ramsey had not made a prima facie case of sexual harassment, since any change in her working conditions or terms of employment was her own fault. Although the court found evidence of behavior by City employees which was questionable, "no pattern of arguably improper conduct was established." *Id.* at 14. The court found that Ramsey had not brought her complaints to the proper authorities, and any lack of action on the part

---

1. 42 U.S.C. § 2000e, *et seq.* (1982).

of the City was due to Ramsey's unwillingness to properly report the incidents she found harassing. *Id.* at 14–15. The judge found that "[c]onsidered individually and in their totality, the incidents presented do not paint a picture of the hostile working environment envisioned by Congress in Title VII and by the Supreme Court in [*Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)]." Memorandum Opinion and Order at 13.

The court further found that there had been no constructive discharge, since working conditions were not such that a reasonable person would feel compelled to resign; thus Ramsey had failed to establish that the City intended to force Ramsey to quit. *Id.* at 15–16. Moreover, the court believed the City's assertion that Ramsey quit to take a job with the State: "The timing of plaintiff's resignation is entirely too coincident with the emergence of her opportunities with the State to support plaintiff's assertions." *Id.* at 16.

Finally, the court found that Ramsey had made a prima facie case of retaliation, but that the City showed that it had a nondiscriminatory reason for its actions. Specifically, the court found that the City legitimately subpoenaed State employees to defend itself in internal Career Service Appeal proceedings which Ramsey initiated against the City. Moreover, it found that information provided to State employees about the proceedings was in the public record, and was provided at the request of those State employees themselves.

Ramsey filed a timely notice of appeal.

### III

### ANALYSIS

#### A. Disparate Treatment

■ Ramsey first argues that the district court erred in finding that the City was not liable for disparate treatment in the areas of her probation extension, the assignment of projects, her evaluation, and the application of disciplinary actions (in particular, her being relieved of supervisory authority after an incident with an employee). She argues that the district court used the wrong legal analysis in deciding her case. We agree with the district judge's analysis, essentially for the reasons given in his Memorandum Opinion and Order.

Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–254, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), a plaintiff must carry the initial burden of establishing a prima facie case of discrimination.[2] Once a prima facie case of discrimination is made out, the burden of production shifts to the defendant to articulate some legitimate nondiscriminatory reason for its action. If the defendant does so, the plaintiff must be given the opportunity to show by a preponderance of the evidence that the reason offered by the defendant is mere pretext. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25; *Burdine,* 450 U.S. at 252–254, 101 S.Ct. at 1093–94. This is the analysis applied by the district court in the instant case.

Ramsey argues that where as here there is direct evidence of employer discrimination, a different analysis is to be used, citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1984). There the Court stated that "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." The

---

**2.** The district court applied the standard set out in *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, in determining whether Ramsey had made out a prima facie case of disparate treatment. Memorandum Opinion and Order at 4. Its approach was consistent with *McDonnell Douglas,* which recognized that the specification of prima facie proof there required is not necessarily applicable in every respect in differing factual situations. *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–54 n. 6, 101 S.Ct. 1089, 1094 n. 6, 67 L.Ed.2d 207 (1981); *see also* the adaptations used in *Carino v. University of Oklahoma Board of Regents,* 750 F.2d 815, 818 (10th Cir.1984); *Carlile v. South Routt School District RE–3J,* 739 F.2d 1496, 1499–1500 (10th Cir.1984); *Garner v. Boorstin,* 690 F.2d 1034, 1036 n. 4 (D.C.Cir. 1982).

shifting burdens of proof of *McDonnell Douglas* are designed to assure the plaintiff has his day in court despite the unavailability of direct evidence of discrimination. In *Thurston* there was direct evidence that the method of transfer available to a disqualified flight captain depended on his age. The policy was thus discriminatory on its face. 469 U.S. at 121, 105 S.Ct. at 621–22.

Ramsey correctly states these general rules for Title VII suits. However, we are convinced that the evidence she presented was not direct, but rather indirect or circumstantial. Ramsey claims that because the Director of the Traffic Division, James Brown, was known to believe that certain jobs were more suitable for women than others, direct evidence of discrimination existed. There was evidence that Brown was widely known to have ideas about women's place in the workforce. IV R. 397–400; V R. 543–545; VI R. 738–739. In fact Brown testified to his feelings about women being better suited to some jobs than to others. II R. 36–38. However, Brown, who was in charge when Ramsey began working for the City, did hire her. II R. 67–69.[3] *Thurston* does not hold that the *McDonnell Douglas* shifting burdens do not apply where there is direct evidence of personal bias, but where there is "direct evidence of discrimination." 469 U.S. at 121, 105 S.Ct. at 621–22. For Ramsey's argument to be valid, the evidence would need to show that Brown acted on his discriminatory beliefs. *EEOC v. Wendy's of Colorado Springs, Inc.*, 727 F.Supp. 1375, 1380 (D.Colo.1989) (statements that women are better workers was not direct evidence of gender discrimination where person making statements had no authority to fire or demote male plaintiff). Abhorrent as Brown's private opinions might be, they do not constitute direct evidence of discriminatory *conduct*. In *Price Waterhouse v. Hopkins,* — U.S. —, —, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268, 288 (1989) (emphasis added), the Court stated: "Remarks at work that are based on sex stereotypes do not inevita-

bly prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision. In making this showing, stereotyped remarks can certainly be *evidence* that gender played a part."

We are persuaded that the evidence of Brown's statements constitutes circumstantial or indirect evidence, and not direct evidence of discrimination within the meaning of *Thurston,* 469 U.S. at 121, 105 S.Ct. at 621–22. These statements are on their face expressions of Brown's personal opinion, and not an existing policy which itself constitutes discrimination as in *Thurston.* In *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1549 (10th Cir.1987), we held that an offer of specific instances of discriminatory statements, from which it was argued that the determining cause of an employment decision might be inferred, was not direct evidence of causation on the employment decision. The statements do not constitute evidence such as "the testimony of one who asserts actual knowledge of a fact, such as an eyewitness." Devitt, Blackmar & Wolff, FEDERAL JURY PRACTICE AND INSTRUCTIONS (1977 and 1987), § 15.02; *see also* § 72.03. The latter section contains the charge that circumstantial evidence is "the proof of a chain of circumstances pointing to the existence or non-existence of certain facts." In *Wilkins v. Hogan,* 425 F.2d 1022, 1025 n. 1 (10th Cir.1970), we held proper under Kansas law a charge that "[i]n 'direct' evidence, witnesses testify directly of their own knowledge of the main fact or facts to be proved, while 'circumstantial' evidence is the proof of certain facts and circumstances in a given case from which a jury may, under certain conditions, infer other connecting facts which usually and reasonably follow according to the common experiences of mankind."

Thus the statements of Brown were circumstantial or indirect evidence, and did not constitute direct evidence of discrimination against Ramsey.[4] Accordingly the

---

**3.** Brown hired Ramsey on the basis of recommendations by his subordinates. II R. 67–69.

**4.** Ramsey advances a related contention that an employer's policy can be direct evidence of dis-

method of analysis of the district judge was not in error.

■ We turn to the five points argued by Ramsey in connection with her disparate treatment claim. First, she contends that the extension of her probation was disparate treatment of her. The district judge found, however, that her probation period was extended in lieu of termination. There had been a consensus that Ramsey's interpersonal skills had not improved to the degree necessary to adequately perform her job. The trial judge found that the defendant's explanation sufficiently articulated nondiscriminatory reason for the City's action; that the defendant's reasons for extending Ramsey's probation were not a pretext; and that this claim of disparate treatment fails. Memorandum Opinion and Order at 6–7. We hold that this finding of the trial judge was not clearly erroneous. While Ramsey was considered particularly competent in technical matters, Plaintiff's Exhibit 21, she had received below average marks in "interpersonal skills." *Id.* There was testimony that her probation was extended as an alternative to termination. VII R. 898–900, 905; II R. 71–72. There was testimony that interpersonal skills and personal characteristics are important in the Traffic Engineering Division. II R. 66, 73. We are satisfied the finding against this claim was not clearly erroneous.

■ Second, plaintiff says there was disparate treatment of her because she was given inadequate supervisory assistance. With respect to this claim, the judge pointed to testimony with references to the fact that Ramsey received numerous, almost continuous assignments from Mr. Ellerbrock (the Deputy Director of the Traffic Transportation Engineering Division) and worked closely with him on these projects; that it was clear Mr. Ellerbrock acted as Ramsey's informal supervisor during her employment. The court thus found that Ms. Ramsey in this instance failed to establish her prima facie case in that her treatment was not in fact different from that

accorded a similarly situated male. We agree that the testimony indicated Ramsey was under the supervision of Mr. Ellerbrock. III R. 114–15; VI R. 736; *see also* VII R. 833–35. Although Ramsey's most immediate supervisor Mitchell asked to be relieved of supervision of Ramsey, there was evidence he did so more due to his not getting along with her, than feeling he was not qualified to supervise her. V R. 415, 448–49, 490–91. Again, we hold that the finding rejecting this disparate treatment claim was not clearly erroneous.

■ Third, Ramsey argues that disparate treatment was shown by the difference in projects and assignments she received. She complains particularly of the decision to have her supervise Jurado, who she claims was an "overt sexist." The trial judge found that actually plaintiff's assignments favored her over other employees. The judge concluded that because of her being favored over others, further analysis seemed superfluous. In any event the trial judge found that if plaintiff could establish damages on this claim, she has not met her burden to rebut the defendant's asserted legitimate, nondiscriminatory reason for the plaintiff's favorable treatment. The defendant asserted that Ms. Ramsey was given favorable project assignments because of her high degree of technical competence and it was found the evidence was undisputed Ramsey was the best qualified applicant to fill her position. The court found that Ramsey failed to establish by a preponderance of the evidence that the City's explanation was a pretext for discrimination, and this disparate treatment claim also failed. There was evidence that Ramsey had the opportunity to work on important and meaningful projects, even at the beginning of her employment. VII R. 834, 834–45. The fact that Ramsey was assigned to supervise Jurado does not establish discrimination and there was no evidence that the assignment was made for the purpose of making Ramsey's employment more difficult. We hold that the find-

crimination *per se* and that the City had a de facto policy of discrimination. We disagree. The argument is again premised on Brown's

attitude and statements. These statements do not themselves amount to proof of discrimination for reasons we have already given.

ing against this disparate treatment claim was supported by the record and not clearly erroneous.

▮ Fourth, plaintiff argues that she was given unfair evaluations as part of her disparate treatment. As to this claim, the district judge found that even if Ramsey's prima facie case had been established, she had not met her burden to rebut the City's asserted nondiscriminatory reasons. There had been reports that Ramsey was difficult to work for, VII R. 836, and that she was "over-demanding and overbearing" in her relationship with Jurado, VII R. 847. We agree with the district judge that Jurado's evaluation is not useful for a comparison because of the difference in their positions. *See* VII R. 816; Memorandum Opinion and Order at 9–10. The City's response was essentially the same as its justification for Ramsey's probation extension, and the trial court's acceptance of it was not clearly erroneous.

▮ Fifth, Ramsey complains that there were improper and unfair disciplinary actions taken against her which amounted to disparate treatment. Here the judge found that Ramsey failed to establish a prima facie case of being unfairly disciplined because of her sex. Ramsey's argument is that she was subjected to improper disciplinary action by being removed from her supervisory responsibilities after an argument with Jurado. However, given the evidence of Ramsey's ongoing problems, we find no clear error in the trial judge's finding that the prima facie case was not established.

In sum, we hold that the trial court's rejection of the disparate treatment claim of Ramsey was not error. It was premised on findings of ultimate fact, subject to review under the clearly erroneous standard. *See Pullman–Standard v. Swint*, 456 U.S. 273, 289–290, 102 S.Ct. 1781, 1790–91, 72 L.Ed.2d 66 (1982). Being persuaded that those findings were not clearly erroneous, we affirm the rejection of the disparate treatment claim.

### B. Constructive Discharge

▮ Ramsey asserts that the district court erred in finding that there was no constructive discharge. She asserts that the district court placed too high a burden of proof on her because it required proof that the employer intended to make her quit her job. Although Ramsey has correctly stated the legal standard, we disagree with her characterization of the district court's opinion.

It is true that we have held that a plaintiff need not prove that the employer's intention was to force the employee to quit:

> '[T]o the extent that [the employer] denies a conscious design to force [the employee] to resign, we note that an employer's subjective intent is irrelevant; *[the employer] must be held to have intended those consequences it could reasonably have foreseen.'*
>
> .... Our position, then, is that the question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.

*Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir.1986) (quoting *Clark v. Marsh*, 665 F.2d 1168, 1175 n. 8 (D.C.Cir.1981)) (emphasis in original). *See also Spulak v. K Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir.1990).

However, the district court did not rest its decision only on a lack of proof regarding the employer's subjective intent. In fact, its opinion stated that Ramsey "simply has not established that defendant's action 'made working conditions so difficult that a reasonable person in [her] position would feel compelled to resign.'" Memorandum Opinion and Order at 16 (quoting *Derr*, 796 F.2d at 344).

This is a finding of ultimate fact, subject to review under the clearly erroneous standard. *Pullman–Standard v. Swint*, 456 U.S. 273, 288–290, 102 S.Ct. 1781, 1789–91, 72 L.Ed.2d 66 (1982). The plaintiff has not demonstrated that this finding is clearly erroneous. Nor is such clear error shown as to the finding that Ramsey resigned her

position because she wished to go to work for the State of Colorado rather than because of any malfeasance by the City. Memorandum Opinion and Order at 16.

For these reasons we affirm the district court's ruling on the issue of constructive discharge.

### C. Sexual Harassment

 Ramsey next argues that the trial judge erred in rejecting her sexual harassment claim. She says first that the court's finding that there was no actionable hostile work environment was erroneous. Second, she contends that the court incorrectly applied *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), by factoring in allegations that Ramsey was difficult to get along with. Lastly, she says that the judge erred in finding that the City's responses were adequate. We disagree, and uphold the district court's ruling on this claim on the basis of its fundamental finding that a hostile work environment was not sufficiently shown.

We disagree with Ramsey's argument that the district court found that the sexual harassment was mitigated by her personality differences. To so find would be error since discrimination is prohibited irrespective of the employee's personality. However, the district judge found that the incidents did not paint a picture of a hostile working environment envisioned by Congress in Title VII and by the Supreme Court in *Vinson,* concluding that "in our view plaintiff's personality was the primary force behind her failure to advance with the City." Memorandum Opinion and Order at 13. We see no reversible error in the findings, because the thrust of the ruling was the failure to establish a prima facie case of an actionable hostile work environment. "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Vinson,* 477 U.S. at 67, 106 S.Ct. at 2405 (quoting *Henson v. Dundee,* 682 F.2d 897, 904 (11th Cir.1982)).

We hold that the ultimate finding of the district court—that a picture of a hostile work environment under the *Vinson* standard was not established—was not clearly erroneous and thus may not be reversed. *Pullman–Standard v. Swint,* 456 U.S. at 288–290, 102 S.Ct. at 1789–91. In so holding we do not indicate that sexual discrimination in varying degrees is appropriate; we are merely holding that here the ultimate finding of fact was not clearly erroneous and on this record should not be reversed.

### D. Retaliation

Finally, Ramsey argues that the district court erred in rejecting her claims of retaliation. She argues that because there was direct evidence of discrimination, the defendant's burden of production was altered. We disagree. For reasons explained earlier, we feel that there was no direct evidence of discrimination which altered the defendant's burden; the proof was in the nature of circumstantial or indirect evidence.

We affirm the district court's ruling on this issue. As the district court noted:

> [T]he City … asserted a nondiscriminatory reason for its actions. To rebut plaintiff's Career Se[r]vice claims, defense counsel had an obligation to investigate and assess the evidence. Evidence about plaintiff's application, interview and acceptance would have been directly relevant and admissible at the Career Service hearing to respond to the constructive discharge claim. In the Career Service Appeal setting, evidence of plaintiff's personality conflicts with State employees would likely also have been admissible, to rebut claims of sexual harassment and disparate treatment.

Memorandum Opinion and Order at 17–18.

 As for the allegation of Ellerbrock's giving out information, we cannot say that Ellerbrock acted improperly under the circumstances. VI R. 670–673, 710–713; VII R. 809–811, 878–879; Defendant's

Ex. LL; Defendant's Ex. X, Rule 19–25; Plaintiff's Ex. 72A. We agree with the district court that *Rutherford v. American Bank of Commerce*, 565 F.2d 1162 (10th Cir.1977), does not support Ramsey's argument. "First, the *Rutherford* case stands primarily for the proposition that Title VII's prohibitions extend to former as well as current employees. Additionally, there were no persuasive nondiscriminatory reasons articulated by the defendant in *Rutherford.*" Memorandum Opinion and Order at 18.

Although we are troubled by one witness' remark that Ramsey was given a lower evaluation rating because of her complaints about a sexist remark, IV R. 410, this was not the foundation for Ramsey's retaliation claim. This claim was based on contacts between the City and Ramsey's present employer. Plaintiff–Appellant's Opening Brief at 43–44. We see no evidence with regard to those claims which should operate to change the City's burden of production of proof. The trial court's finding that the City established a nondiscriminatory basis for its actions in defending itself in the Career Service Appeal was not error.

## IV

### CONCLUSION

Since no reversible error has been demonstrated, the judgment of the district court is

AFFIRMED.