No. 44,577

W. A. Thomas, d/b/a W. A. Thomas Supply Company; Preferred Fire Insurance Company; Commercial Standard Insurance Company; Aetna Casualty & Surety Company; Aetna Insurance Company; Agricultural Insurance Company; American Equitable Assurance Company; Bankers & Shippers Insurance Company; General Accident Fire & Life Assurance Corp.; National Surety Corporation; Newark Insurance Company; St. Paul Fire & Marine Insurance Company; and American Indemnity Company, *Appellees,* v. Kansas City Southern Railway Company, *Appellant.*

(421 P. 2d 51)

Opinion filed December 10, 1966.

*J. Curtis Nettels,* of Pittsburg, argued the cause, and *R. L. Letton* and *R. L. White,* also of Pittsburg, were with him on the brief for the appellant.

*Perry Owsley,* of Pittsburg, argued the cause, and *L. M. Ascough, John A. Bausch* and *J. H. Eschmann,* all of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

Schroeder, J.: This is an action for fire damages under K. S. A. 66-232, alleged to have been caused by the operation of a railroad, and attorney's fees pursuant to K. S. A. 66-233. Appeal has been

duly perfected from a judgment in favor of the plaintiffs on both the question of damages and the allowance of attorney's fees.

The basic question concerns the sufficiency of the plaintiffs' evidence to support the verdict of the jury. A subsidiary procedural question is presented concerning the allowance of attorney's fees.

K. S. A. 66-232 provides:

"That in all actions against any railway company organized or doing business in this state, for damages by fire caused by the operating of said railroad, it shall be only necessary for the plaintiff in said action to establish the fact that said fire complained of was caused by the operating of said railroad, and the amount of his damages (which proof shall be prima facie evidence of negligence on the part of said railroad): *Provided,* That in estimating the damages under this act, the contributory negligence of the plaintiff shall be taken into consideration."

K. S. A. 66-233 is companion thereto and provides:

"In all actions commenced under this act, if the plaintiff shall recover, there shall be allowed him by the court a reasonable attorney's fee, which shall become a part of the judgment."

The plaintiffs (appellees) are W. A. Thomas, individually, and twelve subrogated fire and casualty insurers, who collectively suffered damages in the total sum of $20,227.30 as a result of a fire that occurred on the 29th day of February, 1964, at the premises of The A. Messenger Lumber & Millwork Construction Company and the adjoining building owned by W. A. Thomas Supply Company in Pittsburg, Kansas, alleged to have been caused by the negligent operation of a train by the Kansas City Southern Railway Company (defendant-appellant).

Prior to trial the parties agreed upon the amount of damage suffered by the plaintiffs, leaving as the only issues to be tried: (1) The right of the plaintiffs to recover, and if entitled to recover, (2) the amount of their allowance for attorney's fees.

The action was tried to a jury on the 26th and 27th days of October, 1965, which resulted in a verdict in favor of the plaintiffs for the stipulated amount.

Over the defendant's objections the trial court separated the issue of attorney's fees from the plaintiffs' case in chief, and this issue was later tried to the court without a jury on the 17th day of November, 1965. After overruling the defendant's post-trial motions, the trial court heard evidence and entered an award allowing attorney's fees in the amount of $5,000 for the plaintiffs. Accordingly, judgment was entered against the defendant in the total amount of $25,227.30.

The evidence disclosed that on the 29th day of February, 1964, five diesel locomotives carrying 130 freight cars left Neosho, Missouri, at 1:05 p. m. bound northward for Pittsburg, Kansas. The train, owned and operated by the defendant on its main line, was designated by the railroad as K. C. S. train No. 42.

The temperature on the day in question was around 50 degrees in the Pittsburg area, with strong, gusty, southerly winds from 30 to 40 miles per hour, between the hours of 2:00 and 3:00 that afternoon.

At 1:35 p. m. train No. 42 arrived in Joplin, Missouri, stopped, and left for Pittsburg at 1:45 p. m. Mathematical calculations disclosed that train No. 42 was located at mile post 135 six miles south of the yard limits at about 2:08 p. m., and stopped at the yard limits located approximately 200 yards north of mile post 129 at 2:20 p. m.

At Pittsburg the five diesel locomotives in train No. 42 were removed and did not go on north to Kansas City.

The tracks of the defendant are on a slight descending grade from mile post 135 to Pittsburg, and the testimony disclosed that sparks come from the braking of a train's wheels.

From a point just north of mile post 135 to a point just north of mile post 130, a distance of six miles, there were twelve separate fires which were on the east side of the tracks extending from the chat and gravel along the railroad right of way to the northeast. There were no burned areas south and west of the tracks. The tracks from Joplin to Pittsburg ran in a north-northwesterly direction.

The plaintiffs offered the testimony of five persons, all of whom live south of Pittsburg on farms contiguous to the K. C. S. right of way. They all testified to essentially the same thing—that as train No. 42 passed their properties northbound, fires were started on the east side of the right of way, developing rapidly, fanned by the wind, and moving to the north.

None of the witnesses who saw train No. 42 on the 29th day of February, 1964, saw any combustible or fiery particles coming from the train. There was no direct evidence of any causal relationship between the passage of the train and the starting of the fires.

There was one eye witness to the location and origin of the fire that caused the plaintiffs' damages (hereinafter referred to as the Messenger fire). That witness was John D. Messenger, Jr. According to his testimony, he was driving west on Fourth Street in Pitts-

burg and was at the point where Fourth Street overpasses the K. C. S. railway tracks, when he looked to the south and saw a fire "the size of a washtub" at a point approximately 200 yards south and on the east side of the K. C. S. tracks. He testified that "in a matter of a split second" the fire had increased rapidly in size. It took him from a minute and a half to two minutes to return to the Messenger Lumber Company office and call the fire department, after having first seen the fire. The call was received by the Pittsburg Fire Department at 2:30 p. m. When Messenger saw the fire he looked down the K. C. S. tracks to the south, but at the time there was no train going past.

The caboose of train No. 42 had pulled into the Pittsburg north yards, north of mile post 129, at 2:20 p. m. This was more than a mile north of the point where Messenger saw the fire, it having started in the vicinity of mile post 130.

The sheriff of Crawford county testified that his office acts as a communications center for rural fire fighters, and the first call his office received on the day in question about the fires was at 2:22 p. m., whereby his office was informed of a fire four miles south and three miles east of Pittsburg.

Based upon the foregoing circumstantial evidence the jury found the Messenger fire was caused by the operation of K. C. S. train No. 42 resulting in the loss to the plaintiffs.

The defendant challenged the sufficiency of the plaintiffs' evidence to support a verdict on three occasions throughout the trial, once by a motion to dismiss at the close of the plaintiffs' case, again by a motion for judgment after all of the evidence was presented, and finally by post-trial motions for the same relief.

The appellant contends the statements of the plaintiffs' witness, John D. Messenger, Jr., uncontradicted and unexplained, coupled with the statements of the plaintiffs' witness, W. G. White, (giving the time K. C. S. train No. 42 passed the various points heretofore indicated) are binding and conclusive admissions against the appellees, which preclude their recovery. The appellant argues:

"We know that at 2:28 p. m. the fire that damaged the appellees started just south of mile post 130. The fire was called in at 2:30. The appellant's train was not anywhere near the origin of the fire at the time the fire was seen to start by John Messenger. *Messenger saw no train in the area, as indeed he could not have, since it was already in the north yards, over a mile away, and had been since 2:20.* The circumstantial evidence in the plaintiffs' case which tends to implicate appellant must yield to the direct evidence in plaintiffs' case which

absolutely exonerates the appellant from any connection with the fire in question."

The appellant concedes the Supreme Court will look only to that evidence tending to support the findings of the jury and the judgment of the lower court, but argues this rule yields to the impact of admissions made by a party in his testimony while a witness in the case, and such admissions are binding and conclusive upon him if uncontradicted or unexplained, whether such admissions are elicited on direct examination or on cross examination of the party. (*Blackmore v. Auer*, 187 Kan. 434, 441, 357 P. 2d 765; *Hiniger v. Judy*, 194 Kan. 155, 165, 398 P. 2d 305; and see, *Bell v. Johnson*, 142 Kan. 360, 46 P. 2d 886.)

It should be noted the appellees' witnesses, John D. Messenger, Jr. and W. G. White, are *not parties* to this action. John D. Messenger, Jr. testified that he worked for his father at the Messenger Lumber Company, and W. G. White was the trainmaster of the Kansas City Southern Railway Company's Kansas City-Watts, Oklahoma, division.

It is contended by the appellant that the court and jury disregarded the uncontradicted testimony of John D. Messenger, Jr., a witness who testified as to every material element in an attempt to show the appellant's right to recover, but whose testimony was fatal to such right.

The appellant's contention is based upon the assumption that the Messenger fire started adjacent to the K. C. S. railway tracks at, or within a few seconds of, the instant Messenger first saw it. The appellant is not entitled to make this assumption. The fact that no witness saw a fire at the point of origin of the Messenger fire prior to J. D. Messenger, Jr. does not establish that there was no fire at such point prior thereto. The jury was entitled to infer from all the evidence that the fire had been smoldering for some minutes before it spread or ignited combustible material in sufficient quantity to flare up, as it appeared when Messenger first saw it.

It is obvious from the record that the train passed the point where the Messenger fire started within ten minutes of the time when Messenger first saw the fire, and the jury was convinced that the train which caused eleven other fires along its right of way also caused the twelfth fire. The rule to be applied on this point is that the weight of all the testimony was for the jury, and its verdict, if supported by substantial competent evidence, is conclusive and will

not be disturbed on appellate review. The mere fact that some of the evidence tended to support the appellant's defense does not mean, and is not to be interpreted in such a manner, that it may be said the verdict of the jury was contrary to the evidence. (*Novascone v. Knott*, 177 Kan. 86, 276 P. 2d 332.)

The appellant contends the court erred in separating the issue of attorney's fees from the issue of liability at the trial, and in entering judgment thereon at a separate hearing before the court.

The appellant further contends that the trial court erred in denying the appellant a jury trial on the issue of attorney's fees, and relies upon *Mo. Pac. Rly. Co. v. Merrill*, 40 Kan. 404, 19 Pac. 793; *Ft. S. W. & W. Rld. Co. v. Karracker*, 46 Kan. 511, 26 Pac. 1027; *Ft. S. W. & W. Rly. Co. v. Tubbs*, 47 Kan. 630, 28 Pac. 612; and *Gray v. Railway Co.*, 89 Kan. 325, 131 Pac. 555.

In *Mo. Pac. Rly. Co. v. Merrill*, supra, the court said:

"The question, what was a reasonable attorney's fee, was properly submitted to the jury. It is true, the statute provides that the court shall allow a reasonable attorney's fee, which shall become a part of the judgment. The word 'court,' however, was doubtless used by the legislature in the broader sense as including both judge and jury or judge alone, according as the court may be constituted when the trial occurs. What is a reasonable attorney's fee is a question of fact which should be submitted and determined the same as any other fact arising in the case." (p. 409.)

The cases upon which the appellant relies are all consistent with the foregoing construction of K. S. A. 66-233.

At the time 66-233, *supra*, was first construed by the Kansas Supreme Court, there was no section of the civil code which authorized the trial court to separate the issues for trial in a given case. The separation permitted was between the plaintiff and any or all of the several defendants when justice would be promoted by such action. (G. S. 1868, ch. 80, § 268.) It was not until 1909 (L. 1909, ch. 182, § 280) that the legislature authorized the trial court to order the separate trial of issues. (See, G. S. 1949, 60-2904.) This section (60-2904, *supra*) has been superseded by K. S. A. 60-242 (*b*) which reads:

"The judge in furtherance of convenience or to avoid prejudice may order a separate trial in the county where the action is pending or a different county in the judicial district, of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

This section of the present code of civil procedure clearly author-

izes separate issues involved in a claim or defense to be tried separately. This rule is applicable to both jury and non-jury cases, and issues triable to the court may be tried separate from those triable to a jury. Expediency, avoidance of confusion and fair play are all involved in the exercise of court discretion in this matter under the new code.

The last of the Kansas cases to adhere to the old construction of 60-233, *supra*, was *Gray v. Railway Co.*, supra, decided in 1913. When the general verdict in that case was returned, there was no verdict with regard to the attorney's fees, and no evidence was presented to the jury nor to the court at the time it rendered judgment as to the value of the attorney's fees. In the journal entry, however, the court found a reasonable attorney's fee was $400 and entered judgment in favor of the plaintiff for that amount as his attorney's fee. In this the Supreme Court held the trial court erred, following the *Merrill* decision. There is no indication the statutory section authorizing the separation of issues in the civil code (L. 1909, ch. 182, § 280) was asserted by counsel as a ground for the separation of the issues in that case. We therefore view *Gray v. Railway Co.*, supra, as having been decided on the authority of the older cases without giving consideration to the foregoing section of the statute enacted in 1909, the point not having been presented to the court for consideration.

Here, in defense of the trial court's order separating the issues, the appellees rely upon 60-242 (*b*), *supra*, which authorizes the separation of issues.

Was the issue of attorney's fees a matter for the jury in the instant case?

Under K. S. A. 66-233, the amount of attorney's fees is a judgment in favor of the plaintiff and not in favor of his attorney. Canon 19 of the Canons of Professional Ethics (164 Kan. xv) provides:

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

On the same subject the Committee on Professional Ethics of the Bar Association of the State of Kansas has issued its Opinion No. 5 which reads:

"It is the opinion of the Committee that where a lawyer intends to be a witness to a material matter in the trial of a case, it would be a violation of Canon of Professional Ethics No. 19, for either him or the law firm of which he is a

member, to appear as counsel in the case, and further, that if such lawyer or the firm of which he is a member, has appeared, both he and his firm should withdraw from the case when it becomes apparent that he will be such witness, except in those rare cases where from some unforeseen event occurring in the progress of the trial, his testimony becomes indispensable to prevent an injustice. However, such representation would involve no impropriety where testimony to mere formal matters only is to be given."

It would appear in view of the foregoing rules of ethics that if an attorney accepts employment from a client in an action under K. S. A. 66-232, his client, under the old decisions, would be required to waive a right given by K. S. A. 66-233 for the simple reason that by accepting employment the attorney could not testify as to the nature of his services, the time involved, or the reasonable value of such services. This would be required should the issue of attorney's fees be triable to a jury.

Apparently sensing this dilemma, the trial court separated the issue of attorney's fees from the issue of liability in this case, and ordered that the matter of attorney's fees should be reserved for the court as a court matter at the conclusion of the trial.

The history of Kansas law discloses that ordinarily under equitable principles the court, sitting without a jury, makes an allowance of attorney's fees. (See, *Elliott v. Oil Co.*, 106 Kan. 248, 187 Pac. 692; and *Young v. Santa Fe Trail Transportation Co.*, 179 Kan. 678, 298 P. 2d 235.) Under such circumstances, where no evidence of the extent and worth of the attorney's services is presented, it has been said the fee would have to be limited to the fair value of the services performed by the attorney—they being matters of which the trial court is apprised without formal evidence; for example, the attorney's services are disclosed by the files in the case, the briefs, if any, and what preparation had been made for trying the case, as manifested to the court by the way the attorney did in fact try it. (*Wheat Growers Ass'n v. Rowan*, 125 Kan. 657, 266 Pac. 104.)

In fact, it has been said the trial court itself is an expert in determining the value of legal services rendered. In *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 366 P. 2d 219, the court said:

"While the trial court should give due consideration to the opinions of the expert witnesses as to the value of legal services, it is not controlled by such evidence, as the trial court itself is an expert on this subject and may apply its own knowledge and professional experience in determining the value of the legal services rendered. (*Epp v. Hinton*, supra, Syl. ¶ 4 [102 Kan. 435, 170 Pac. 987].)" (p. 714.)

We hold that K. S. A. 60-242 (b), asserted to this court as a basis for the construction of K. S. A. 66-233 for the first time, discloses an intention on the part of the legislature to authorize the separation of the issues of liability and the allowance of attorney's fees in 66-232 and 66-233, *supra*, and leaves the decision whether to separate the issues within the trial court's discretionary power. The trial court therefore properly separated the issue of attorney's fees from the issue of liability.

We further hold, for the reasons heretofore asserted, that the issue of attorney's fees, when separated and heard independently of other issues in the case, is properly a matter for the determination of the trial court without the intervention of a jury, and prior decisions inconsistent herewith are disapproved. Accordingly, the trial court did not err in making an allowance of a reasonable attorney's fee after hearing evidence on the matter in the lower court.

The judgment of the lower court is affirmed.