No. 45,738

THE CITY OF WICHITA, KANSAS, a Municipal Corporation, *Appellant,*
v. UNIFIED SCHOOL DISTRICT No. 259 (Wichita) Sedgwick County,
State of Kansas, *Appellee.*

(472 P. 2d 253)

Opinion filed July 17, 1970.

*Everett C. Fettis,* of Fettis and Arabia, of Wichita, argued the cause, and
*John Dekker,* of Wichita, and *Robert C. Allan,* of Allan & Freeman, Wichita,
were with him on the brief for the appellant.

*J. Ashford Manka,* of Wichita, argued the cause, and *Donald W. Bostwick,*
of Adams, Jones, Robinson & Manka, Wichita, was with him on the brief for
the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is a condemnation case involving the amount
of compensation, if any, reasonably needed by the school district
to provide equivalent substitutes for the land condemned. It is the
sequel to *City of Wichita v. Unified School District No. 259,* 201
Kan. 110, 439 P. 2d 162, in which we held the trial court erred in
directing a verdict allowing the district $14,530 for replacement
loss of the Skinner School site of 4.13 acres taken in the condemna-
tion proceeding. In accordance with our decision, a new trial was

held, resulting in a jury verdict and judgment for the school district in the amount of $110,500 from which the city has perfected this appeal.

Reference to our earlier opinion will disclose the factual background giving rise to this controversy.

Briefly, the Skinner school was closed in the spring of 1964, but by stipulation of the parties the school property was considered as being used for public school purposes on the date of taking, February 15, 1966. When use of the Skinner facility was discontinued, no additional land was purchased but the pupils were divided among three nearby schools. The record in this appeal indicates that approximately 80 to 90 students were sent to Isely, from 160 to 170 went to Mueller, and between 70 and 80 were absorbed at L'Ouverture. Special education students who had been attending Mueller and L'Ouverture were transferred to the Bridgeport School to make room for the Skinner children.

As was pointed out in our prior opinion, at the time of the first trial plans were underway for acquiring additional land at Isely to care for the former Skinner children at a stipulated cost of $14,530. The trial court, we held, erroneously took the view the tract added to Isely was the only land required to restore the district's facilities to the status of utility enjoyed prior to the condemnation, and that as a matter of law both Mueller and L'Ouverture Schools were capable, without additional land expense, of caring for their share of the children from Skinner without diminishing or impairing the district's over-all capacity to provide educational facilities for its youngsters.

The essence of our holding is found in the following language of Justice Fontron, speaking for the court:

". . . [W]e believe the amount of compensation, if any, reasonably needed by the district to provide equivalent substitutes for the land condemned, presented a question for the jury to determine . . . Substitute facilities need not duplicate those which are taken, if they be of equivalent utility, and where no replacement is required to restore a public agency to its prior state of efficiency in discharging its public functions, nominal damages only are justified . . . However, what, if anything, may be the reasonable cost of *furnishing necessary* replacements constitutes a factual question.

. . . . . . . . . . . . . .

". . . The correct measure of compensation is the cost [of] providing *necessary* replacements or *equivalent* substitutes." (pp. 119-120.)

Within the context of the foregoing language the city now contends the district court erred at the new trial in permitting the

school district to introduce speculative evidence under the guise of expert testimony with regard to need for replacement of the land taken and the cost thereof. The city argues that speculative land values were considered on the "vague theory that sometime the district would or might determine the *need* of purchasing another 4.13 acres of land somewhere," when, in fact, the school officials testified such land had not been acquired and that plans had neither been made nor recommended for specific land acquisition. As a result, the city urges the district was permitted to produce evidence of land value without first demonstrating the need therefor.

The city's argument boils down to the question of whether there was evidence from which the jury was justified in finding the district reasonably needed $110,500 to provide equivalent substitutes for the land condemned. Under our well-settled rule, if there is competent evidence of a substantial nature to support the jury's verdict, it will not be overturned on appeal. (*Thomas v. Kansas City Southern Rly. Co.*, 197 Kan. 747, 421 P. 2d 51. See, *In re Estate of Countryman*, 203 Kan. 731, 457 P. 2d 53; 1 Hatcher's Kansas Digest [Rev. Ed.], Appeal & Error § 507.)

When a jury verdict is challenged as not being supported by the evidence, the duty of this court extends only to a search of the record for the purpose of determining whether or not there was substantial, competent evidence to support the verdict. In making this determination, we neither weigh the evidence nor pass upon the credibility of the witnesses, but must view the evidence in the light most favorable to sustaining the verdict. (*White v. Hutton*, 205 Kan. 715, 472 P. 2d 223; *Smith v. Mr. D's, Inc.*, 197 Kan. 83, 415 P. 2d 251; *Schroeder v. Richardson*, 196 Kan. 363, 411 P. 2d 670.)

The only evidence at retrial was that presented by the school district. Viewed most favorably in support of the district's position, we find evidence tending to show that the transfer of Skinner pupils to Isely, Mueller and L'Ouverture was merely a temporary solution for the time being. Each of these schools to which students were transferred was already being put to maximum use before the increment brought about by the addition of the Skinner children. None of the schools had sufficient land for additional buildings, although more land was needed at both the Isely and Mueller sites even before the closing of Skinner. The immediate acquisition of additional land would have taken a sizable expenditure of money, which

the school officials deemed economically unfeasible; further, adequate funds were not available.

In 1963 the Isely site was already overcrowded and "completely inadequate," there being twelve portable classrooms and two portable toilets located on it in addition to the permanent building. With the addition of a part of the Skinner children in 1964, the Isely accommodations were increased to a total of twenty-one portable classrooms, three portable facilities, and three portable toilets. Playground space was extremely limited. The acquisition in the spring of 1966 of eight acres of adjacent land from the park board at a cost of $14,530 made the Isely site adequate for meeting only the existing need. Actually, the additional land had been needed for years to handle the pupils in the Isely area. Although enlargement of the Isely facilities was recommended by the Citizens Planning Council on School Facilities in its report of May 1966, this was no longer in the picture at the time of the new trial because of the difficulty encountered by the district with the Department of Health, Education and Welfare.

The situation at the Mueller site (4⅝ acres) was equally disturbing. As early as 1961 plans were underway to enlarge the permanent building and avoid further use of fourteen portable classrooms and two portable toilets. Upon learning that the highway would take the Skinner School, the district decided from the standpoint of economy the wise thing to do would be to provide additional room by adding eight classrooms to the permanent structure, and thus accommodate temporarily a portion of the Skinner students. In order to obtain more space for the building, as well as to gain additional area for the meager playground facilities, the district obtained permission from the city to locate the permanent structure closer to the street and to erect a retaining wall and fence. This was accomplished at an expenditure of $8,750. The Mueller site, however, was inadequate almost from the time it was built. According to the district's "school plant expert," a study of the problem made it appear the only logical thing to do was to acquire some improved property adjacent to the site; but this could not be done at the time because of lack of funds available to the district.

The impact of the Skinner students on L'Ouverture was of less magnitude in that only one portable classroom was required to be added to that facility in 1964.

There was testimony about there being a definite need to replace

the Skinner site with additional land in the area having similar utility for school purposes; but the district had no other land available in the vicinity. The existing school sites were already taxed to capacity in caring for the students in their respective districts. Two witnesses gave opinions that the school district would be required to pay $120,000 to $125,000 for land reasonably needed to provide equivalent substitutes for the Skinner site condemned.

In view of the evidence that the immediate measures taken by the school district were of a temporary nature and merely compounded the crowded conditions of the nearby schools, it cannot be said that these substitute facilities were of equivalent utility, or that the district was restored to its prior state of efficiency in discharging its function of providing educational facilities for the children in the Skinner School area. The fact the district had not taken steps to acquire specific additional lands was explained by evidence indicating that in the school officials' judgment it would be economically unwise to do so at the present. Notwithstanding, the evidence demonstrated the need therefor, and the jury was justified in finding that the acquisition by the district of additional land was reasonably necessary to restore the district's facilities to the status of utility enjoyed prior to the condemnation.

The evidence presented a factual issue upon which reasonable minds could reach different conclusions, and the city's motion for directed verdict limiting the district's recovery to $14,530 for Isely land costs, and $8,750 for land preparation costs at the Mueller School, was properly overruled. (*Pickens v. Maxwell*, 203 Kan. 559, 456 P. 2d 4; *Elliott v. Chicago, Rock Island & Pac. Rld. Co.*, 203 Kan. 273, 454 P. 2d 124; *Gardner v. Pereboom*, 197 Kan. 188, 416 P. 2d 67.)

In his instructions to the jury the trial judge fully set forth the applicable principles of law as outlined in our first decision, *City of Wichita v. Unified School District No. 259*, supra. The record contains substantial, competent evidence to support the jury's verdict, and the judgment is affirmed.

It is so ordered.