No. 57,864

DWIGHT C. LONG, *Appellee*, v. DEERE & COMPANY, JOHN DEERE
INDUSTRIAL EQUIPMENT COMPANY, *Appellants*.

(715 P.2d 1023)

Opinion filed February 21, 1986.

*Donald Patterson*, of Fisher, Patterson, Sayler & Smith, of Topeka, argued the
cause and was on the briefs for appellants.

*Charles D. McAtee*, of Eidson, Lewis, Porter & Haynes, of Topeka, argued the
cause, and *N. Larry Bork*, of the same firm, was with him on the brief for
appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal in a products liability action by
two defendants from a jury verdict awarding damages for per-
sonal injuries. The appellants, Deere & Company and John
Deere Industrial Equipment Company, are related corporations
which were treated as one entity in the trial court. We will do the
same and the two appealing defendants will be referred to
collectively as Deere or appellants. Deere was found to be 40%
at fault for plaintiff's injuries and the total amount of his damages
was determined by the jury to be $945,000.00.

The facts are essentially undisputed. In October 1971, Deere,
through its local dealer the defendant Capital Equipment, Inc.,
sold a 1971 Model 450B Crawler Loader to Power Constructors,
Inc., the employer of the plaintiff Dwight C. Long. At the time of
the original sale, the crawler loader was not equipped with a

roll-over protective structure (ROPS), nor was it equipped with a seat belt. A crawler loader is a piece of heavy machinery used in earth-moving operations during road building, excavation and similar construction projects. A ROPS is a protective cage used on heavy machinery such as the crawler loader involved here, tractors, bulldozers and similar machines. Its purpose is to provide a protective enclosure to confine and protect the machine operator in the event the machine rolls over while in use. In February of 1973, Capital Equipment sold a Deere ROPS to Power Constructors for installation on the crawler loader. The ROPS kit consisted of the protective cage and a seat belt, both of which were installed at that time. Plaintiff, Dwight C. Long, was employed by Power Constructors in May 1976, and among his duties was the operation of the crawler loader. In January of 1977, while operating the crawler loader, it slid on an embankment and rolled over, and the plaintiff, who was thrown from the operator's seat, was pinned between the ROPS and the frozen ground. Plaintiff suffered severe permanent injuries which will be covered in more detail later in this opinion.

In January 1979, Long filed suit against Deere & Company, John Deere Industrial Equipment Company and Capital Equipment, Inc. Following extensive discovery the case eventually went to trial in October 1984. Although not a party to the litigation, the fault of Power Constructors, Inc., as Long's employer, was submitted to the jury for its consideration. The jury returned a special verdict determining fault in connection with the accident to be:

(1) Deere and Company and John Deere Industrial Equipment Company .......................... 40%
(2) Capital Equipment, Inc. ...................... 22%
(3) Dwight C. Long ............................. 5%
(4) Power Constructors, Inc. ..................... 33%

The jury further found the total amount of damages Long sustained to be nine hundred forty-five thousand dollars ($945,000.00). Deere filed post-judgment motions for judgment notwithstanding the verdict and/or a new trial. These motions were denied by the trial court and Deere has appealed, raising numerous issues primarily factual in nature which have been determined adversely to Deere by the jury. In negotiations following the trial, Capital Equipment and plaintiff reached a

settlement and as a result Capital Equipment is not a party to this appeal.

The action was tried upon theories of strict liability and negligence. A special verdict form consisting of twelve questions was submitted to and answered by the jury as follows:

"We, the jury, present the following answers to the questions submitted by the Court:

1.  We find the defendants, Deere & Company and John Deere Industrial Equipment Company: (check one)
    Yes at fault on theory of negligence.
    _____ not at fault on negligence theory.
    (number of jurors agreeing 12)
2.  We find the defendants, Deere & Company and John Deere Industrial Equipment Company: (check one)
    _____ at fault on theory of strict liability.
    X not at fault on theory of strict liability.
    (number of jurors agreeing 11)
3.  If the jury finds that the defendant, Deere & Company and John Deere Industrial Equipment Company, are liable on either the theory of negligence or the theory of strict liability, state in which one or more of the following respects such defendants are at fault:
    (check one or more; do not answer unless the jury finds the defendants to be liable under one or both of the foregoing theories.)
    _____ (1) in failing to design and/or provide a seat belt, the existence of which would be reasonably apparent or known to users.
    (number of jurors agreeing: _____)
    X (2) in failing to provide adequate warnings of hazards and risks involved in the use of the unit equipped with a ROPS without using a seat belt.
    (number of jurors agreeing: 12)
    _____ (3) in failing to design and/or provide pinion or bull gears of adequate strength for all reasonably foreseeable uses.
    (number of jurors agreeing: _____)
4.  We find the defendant, Capital Equipment, Inc.,: (check one)
    Yes at fault on theory of negligence.
    _____ not at fault on negligence theory.
    (number of jurors agreeing 11)
5.  We find the defendant, Capital Equipment, Inc.,: (check one)
    _____ at fault on theory of strict liability.
    X not at fault on theory of strict liability.
    (number of jurors agreeing 11)
6.  If the jury finds that the defendant, Capital Equipment, Inc., is liable on either the theory of negligence or the theory of strict liability, state in which one or more of the following particulars such defendant is at fault:
    (check one or more; do not answer unless the jury finds that such defendant is at fault on one or both of the above theories)
    _____ (1) in failing to design and/or provide a seat belt, the existence of

which would be reasonably apparent or known to users.

(number of jurors agreeing: _____)

Yes (2) in failing to provide adequate warnings of hazards and risks involved in the use of the unit equipped with a ROPS without using a seat belt.

(number of jurors agreeing: 11)

_____ (3) in failing to design and/or provide pinion or bull gears of adequate strength for all reasonably forseeable uses.

(number of jurors agreeing: _____)

7. We find the plaintiff: (check one)

Yes at fault.

_____ not at fault.

(number of jurors agreeing: 10)

8. If the jury finds that the plaintiff is at fault, state in which one or more of the following respects plaintiff is at fault:

_____ (1) in failing to use an available seat belt.

(number of jurors agreeing:_____)

Yes (2) in failing to look for and/or inquire about a seat belt.

(number of jurors agreeing 10)

_____ (3) in failing to report to his employer that a seat belt appeared to be missing.

(number of jurors agreeing: _____)

_____ (4) in causing the model 450B to tip by improper handling under the circumstances of terrain and weather,

(number of jurors agreeing: _____)

9. We find the plaintiff's employer, Power Constructors, Inc., (check one)

Yes at fault.

_____ not at fault.

(number of jurors agreeing 12)

10. If the jury finds that Power Constructors, Inc., is at fault, state in which one or more of the following respects such employer is at fault:

(check one or more; do not answer unless the jury finds such employer to be at fault)

_____ (1) in allowing plaintiff to operate the model 450B when such employer knew or should have known that plaintiff was not qualified.

(number of jurors agreeing: _____)

_____ (2) in removing the seat belt from the unit after it had been installed by Charles Stewart.

(number of jurors agreeing _____)

_____ (3) or, if not removed, in allowing the seat belt to become hidden from view.

(number of jurors agreeing: _____)

_____ (4) in failing to adequately train plaintiff to operate the unit under the conditions of weather and terrain in question.

(number of jurors agreeing _____)

Yes (5) in failing to instruct the plaintiff concerning the availability and necessity of using seat belts with the unit equipped with a ROPS.

(number of jurors agreeing 12)

11. Considering all of the fault at 100%, what percentage of the total fault is attributable to each of the following:

(1) Deere & Company and John Deere Industrial Equipment Company (0% to 100%) 40%

(2) Capital Equipment, Inc. (0% to 100%) 22%

(3) Dwight C. Long (0% to 100%) 5%

(4) Power Constructors, Inc. (0% to 100%) 33%

(number of jurors agreeing 10)

12. Without considering the percentage of fault found in the foregoing questions, state total amount of damages you find was sustained by the plaintiff. (Write in dollar amounts in words and numbers.)

Nine hundred forty-five thousand dollars        $945,000.

(number of jurors agreeing 10)"

Plaintiff testified that he had never seen a seat belt in the crawler loader, that he was aware of what seat belts were for, that if he had seen one he would have used it, and that he had never been instructed to use a seat belt on units equipped with a ROPS. He also testified he had seen no warnings about using a seat belt on the crawler loader itself and had read no manuals or other documents which advised using seat belts. It is not disputed that when machinery such as that used here does not have a ROPS, it is advisable to not have or use a seat belt so the operator may be able to jump free and avoid injury in case the machine rolls over. On the other hand, it is equally clear that when the machine is equipped with a ROPS then use of a seat belt is almost always advisable to keep the operator within the protective structure in case of a roll over and thereby avoid injury such as was suffered by plaintiff. It was shown that when equipped with a ROPS it is nearly impossible to jump or be thrown free in the event of a roll over and injury or death is almost inevitable unless the operator is restrained within the protective structure by a seat belt. The jury found for Deere on the theory of strict liability but found negligence upon Deere "in failing to provide adequate warnings of hazards and risks involved in the use of the unit equipped with a ROPS without using a seat belt." Thus the principal issues now before this court are whether Deere was under a duty to provide any warnings on use of seat belts and, if so, whether the warnings provided were adequate.

It appears to be clear from the evidence, and there is no serious contention to the contrary, that at the time of the accident

the crawler loader was equipped with the recommended seat belt that came with the ROPS installation kit. The evidence also supports the conclusion that the seat belt was not readily visible or available to the operator in that it had either slipped down between the seat cushion and the back of the seat or had been deliberately stowed beneath the seat cushion. In either event, the seat belt would not be available to the operator without some investigation to locate and properly position the belt in the seat cushion area. While plaintiff testified that if he had seen the belt or known of its existence he would have used it, he also testified he did not know this particular machine was equipped with a seat belt and had not been advised or warned by anyone that its use was imperative.

Deere provided three statements or warnings concerning the use of seat belts. At the time of the initial purchase of the crawler loader, Power Constructors received an owner's or operator's manual covering the care and operation of the machine. In the section describing the seat belt the manual states:

"Seat Belt
    A seat belt is available as special equipment for your crawler.
       ! CAUTION: Under almost all operating conditions:
       1. The use of a seat belt with the optional John Deere canopy is recommended.
       2. Use of a seat belt without roll-over protective equipment is not recommended."

The installation instructions which accompanied the ROPS kit included the same cautionary statement found in the manual. The seat belt itself had a label attached to the buckle which read:

"CAUTION

"Under almost all operating conditions, belt should not be used on tractor which is not equipped with roll over protection."

Plaintiff testified he had never seen the operator's manual or the ROPS kit instructions and had never been advised of the cautionary statements contained therein. As plaintiff had not seen the seat belt and did not know it existed, he likewise was unaware of the statement on the belt buckle.

The numerous and sometimes overlapping and confusing issues raised on appeal will be addressed in the order set forth in appellants' brief. Appellants' many contentions and arguments are primarily an attack upon the evidence and an assertion that there was insufficient evidence to support the verdict in the

various areas raised on appeal. It is also asserted appellants' motion for judgment notwithstanding the verdict should have been sustained. When a verdict is attacked on the ground it is contrary to the evidence, it is not the function of the court on appeal to weigh the evidence or pass on the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below. *Toumberlin v. Haas*, 236 Kan. 138, 689 P.2d 808 (1984).

Appellants' first major contention on appeal is that they were under no duty to warn plaintiff of the advisability or necessity of using a seat belt when the crawler loader is equipped with a ROPS. Several arguments are presented.

Deere first asserts it was under no duty to warn against risks or hazards which are open or obvious and which should have been realized by a reasonable user or consumer. The jury was so instructed by the trial court. It is contended that as the risks of not using seat belts in automobiles is well known and as the possibility for equipment of the type here to roll over is generally known by operators, the hazards are open or obvious and no duty exists. Appellants rely upon testimony from Long and one other operator that they knew the reasons and purposes for seat belts. However, at no time did plaintiff testify that he knew of or had ever been warned of the extreme danger of injury or death in the event of a roll over if the unit was equipped with a ROPS and a seat belt was not being used. While plaintiff testified that if he had seen a seat belt or known one was there he would have used it, there is no showing that he appreciated or had knowledge of the extreme danger in operating the crawler loader without using the seat belt. The general rule regarding a manufacturer's duty to warn is stated in the Restatement (Second) of Torts § 388 (1963):

"§ 388. Chattel Known to be Dangerous for Intended Use.

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

See also *Sell v. Bertsch and Co., Inc.*, 577 F. Supp. 1393 (D. Kan. 1984); *Jones v. Hittle Service, Inc.*, 219 Kan. 627, 549 P.2d 1383 (1976); and Prosser and Keeton on Torts § 96 (5th Ed. 1984).

As with most rules, the above rule requiring a manufacturer to warn is not without exception. One such exception was recognized in *Jones v. Hittle Service, Inc.*, 219 Kan. 627, where the court stated, " 'There is no duty to warn of dangers *actually known* to the user of a product, regardless of whether the duty rests in negligence . . . or on strict liability.' " 219 Kan. 639-40, quoting *Garrett v. Nissen Corporation*, 84 N.M. 16, 21, 498 P.2d 1359 (1972). (Emphasis added.)

A similar rule is found at 63 Am. Jur. 2d, Products Liability § 341.

"It would seem to be an obvious truism to state that there is no duty on the part of a manufacturer or seller to give a warning of a product-connected danger where the person who claims to be entitled to the warning *actually knows* of the danger. The case law also clearly supports the view that a person is not entitled to be warned about something he already knows. Similarly, there is no duty to warn employees of the purchaser of a product, where it appears that such employees knew of the danger to which the warning would have related." (Emphasis added.)

See also Annot., 76 A.L.R.2d 9.

The testimony of the plaintiff about his knowledge of seat belts and the risk of not using them, while perhaps tending to show knowledge of the specific risk involved here, is not specific or conclusive. This factual issue was submitted to the jury under an instruction from the court and the jury decided the issue adversely to the appellants.

Next, Deere contends that where the risks are commonly known and warnings would be futile there is no need to provide any warning at all. Two arguments are made in support of this proposition. The first is that the common knowledge of the alleged advisability of using seat belts in automobiles is so widespread and the public reluctance to using them is so great that further warnings would be useless. Appellants cite a number of decisions and authorities which recognize the reluctance of the American public to use seat belts in their automobiles but, assuming that is true and that knowledge of such reluctance is widespread, it does not address the issue before us. Plaintiff

testified that if he had known of the specific danger involved and that a seat belt was available he would have used it. It is not a question of whether the public is reluctant to utilize available seat belts when driving or riding in an automobile but whether plaintiff knew or should have known of the hazards involved in operating the crawler loader and whether, if warned, he would have conducted himself differently. The operation of a crawler loader is far different from the everyday operation of an automobile on the highways. To say, based upon the habits of the motoring public, that in the present case a warning would not be heeded by plaintiff is nothing but sheer speculation. In fact, he testified to the contrary. We cannot say as a matter of law that the risks here were so commonly known that a warning would have been futile. The factual determination of that issue was determined adversely to appellants.

As a part of this general argument, appellants assert that by reason of our decision in *Hampton v. State Highway Commission*, 209 Kan. 565, 498 P.2d 236 (1972), and its progeny, Deere was under no duty to warn of the risks involved in operating the crawler loader. In *Hampton* the defendant attempted to introduce evidence that the plaintiff automobile driver was not using a seat belt to show negligence on behalf of plaintiff and a failure to mitigate damages. The action involved a claim by plaintiff of a road defect which caused injury to him as driver of an automobile on the highway. This court held:

"A driver has no legal duty to use an available seat belt, and evidence of nonuse is inadmissible either on the issue of contributory negligence or in mitigation of damages." Syl. ¶ 9.

*Hampton* was followed by *Taplin v. Clark*, 6 Kan. App. 2d 66, 626 P.2d 1198 (1981), wherein the rule was determined to apply to a passenger in an action after comparative negligence was adopted. Next to consider the issue were the recent cases of *Ratterree v. Bartlett*, 238 Kan. 11, 707 P.2d 1063 (1985), and *Rollins v. Kansas Dept. of Transportation*, 238 Kan. 453, 707 P.2d 1063 (1985). The rules set forth in *Hampton* and *Taplin* were reaffirmed in those cases. Appellants contend that our decisions in the automobile cases establish as a matter of law that there is no duty to use seat belts in Kansas. The reliance upon the automobile cases is misplaced. Nothing in our automobile seat belt decisions has any bearing upon the negligence, or lack

thereof, or the duty to warn, or lack thereof, in a construction setting where the vehicles involved are construction machines having no comparison or relationship to automobiles on the highways and which in many cases, as here, are specifically precluded from use of the highways. The duties of the motoring public in using the highways of Kansas have been addressed by the legislature and are encompassed in the uniform act regulating traffic on the highways, K.S.A. 8-2204 *et seq.*, and statutes included therein. There are no comparable statutes regulating the operation of construction machinery. The determination that the motoring public has no duty under present law to use seat belts is a far cry from the determination of whether a duty may exist to warn the operator of heavy construction machinery of the necessity of using a seat belt under conditions which admittedly will result in death or injury in a roll over unless seat belts are used. In a brief supporting a motion in limine filed prior to trial by Deere, the distinction between the automobile cases and the present case was clearly recognized. Deere stated, *inter alia*:

"Defendant will contend that this case is distinguishable from *Hampton* and *Taplin* . . . .

1. The vehicles in *Hampton* and *Taplin* were highway vehicles where tip-overs are not significant risk. In *Hampton* the Court observed: 'So likewise the traveler has the right to assume the highway is reasonably safe for travel . . . .' This certainly is not true for off-highway full track vehicles. Their utility is their ability to negotiate terrain so rough that wheel vehicles cannot be used for the same tasks. The roughness of such terrain, combined with load carrying capacity, increases the risk of lateral instability, and the need for a seat belt if the vehicle is equipped with a ROPS.

. . . .
There is a duty, therefore, to use an available seat belt on a 450B [the crawler loader here involved]."

Our prior decisions relating to the use of automobiles do not establish as a matter of law the lack of a duty on the part of operators of heavy construction machinery nor the lack of any duty to warn them of the risks of not using seat belts.

In its contentions that no duty to warn existed on the part of Deere, it is next asserted that admission of certain expert testimony was error. It appears to be the contention of the appellants that the allowance of expert testimony on the scope of the manufacturers' duty to warn and whether there was such a duty constituted error and invaded the province of the jury. Much of the testimony complained of related to the issue of whether the

crawler loader and the ROPS were defectively designed under plaintiff's theory of strict liability in tort which the jury resolved in the appellants' favor. While there was testimony by plaintiff's experts as to the duty to warn based upon the danger existing when seat belts are not used, and on the need for and adequacy of the warning in this case, we do not find any reversible error. In an annotation appearing at 26 A.L.R. 4th 377, entitled *Products Liability: Admissibility of Expert or Opinion Evidence as to Adequacy of Warning Provided to User of Product*, it is stated:

"The admissibility of expert testimony in a products liability case is subject to the same rules governing such evidence generally. Thus, where the courts have found the witness to be qualified to testify, or have concluded that such testimony did not invade the province of the jury, or have determined that the subject. was not one of common knowledge, the courts have held expert testimony as to the adequacy of warnings provided a user of a product to be admissible. Conversely, where the courts have determined that the proposed witness was not qualified in the area of the proposed testimony or where the court determined that the subject matter was one of common knowledge to which the use of expert testimony would add little to the understanding of the jury, the courts have held expert testimony as to the adequacy of a warning provided a user of a product to be inadmissible." pp. 378-79.

In this case one of the issues to be decided was the adequacy of the warnings provided by Deere. As could be expected, the experts for each side testified in support of their respective positions. The transcript reveals that each of plaintiff's experts detailed the criteria they considered in examining the sufficiency of a warning and then concluded that Deere's warning in this case fell short of that standard. In a products liability action it is not error to allow an expert to testify as to an ultimate issue of fact if it will be of special help to the jury on technical subjects as to which the jury is not familiar, if such testimony will assist the jury in arriving at a reasonable factual conclusion from the evidence. *Siruta v. Hesston Corp.*, 232 Kan. 654, 665, 659 P.2d 799 (1983); *Pape v. Kansas Power & Light Co.*, 231 Kan. 441, 445, 647 P.2d 320 (1982). The admission of expert testimony lies within the sound discretion of the trial court and we find no abuse of that discretion here. *Douglas v. Lombardino*, 236 Kan. 471, Syl. ¶ 5, 693 P.2d 1138 (1985).

Appellant's next major category on appeal is that if any duty did exist to warn of the danger of operating this machine, which was equipped with a ROPS, without using a seat belt, then that duty was adequately met and satisfied by the various warning

and caution statements set forth earlier in the opinion. As indicated, there was a cautionary statement contained in the owner's manual, the ROPS installation instructions and on a label affixed to the seat belt buckle. It is undisputed that the plaintiff never saw any of them and obviously had never read them. Much is made about the actual written content of the warnings and their adequacy. None of them provided a direct warning of the serious consequences that would in all probability result from a roll over without using the seat belt. The appellants in their brief explain:

"The warning was somewhat 'soft' because there are some uses in which a seat belt would provide a definite risk, such as on frozen lakes or near a body of water where the operator could be trapped and drown."

As with the previous major issue, appellants assert several arguments in support of their position that if a duty to warn existed it was satisfied. Plaintiff contended at trial that an additional, more specific warning should have been attached to the machine itself in a location where it would be obvious to the operator. Expert testimony to that effect was presented. Plaintiff also contends that the written content of the warnings was unclear and actually constituted a non-warning as there was nothing to indicate under what conditions the use of the belt should be avoided or when the belt should be used. Appellants assert that there are a myriad of dangers involved in the operation of this type of machinery and that if warning labels were attached as to all of them, the sheer volume of the warnings would make them worthless; that as plaintiff could not remember the contents of some of the warnings which were attached, he evidently didn't read them, and wouldn't have followed the warning if he had; and that as plaintiff was aware of the extent of the risk and still didn't use the available seat belt it would have been useless to try to warn him. The problem with all these arguments is that there was conflicting evidence on each point and the jury found Deere failed "to provide adequate warnings of hazards and risks involved." Whether the tragic injuries suffered here might not have occurred if a label, as recommended by plaintiff's experts, had been attached in an appropriate location to the structure of the machine, no one will ever know, but it was an appropriate issue to be considered by the jury. Likewise, whether the rather vague and inconclusive language of the warnings that were supplied was adequate was an issue for the jury.

Appellants contend that the failure to provide an adequate warning was not a proximate cause of the injuries received by plaintiff. It is argued that when the warning is inadequate there is only a presumption of causation between such warning and the ultimate injury which is subject to rebuttal. See *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, Syl. ¶ 11, 681 P.2d 1038 (1984). The argument that plaintiff wouldn't have read a warning label even if he had seen it appears to be based upon plaintiff's inability to recall the content of at least one warning label, on other hazards, which was attached to the dashboard. Plaintiff testified he remembered a label on the dashboard, undoubtedly read it, but could not recall what it said. Appellants argue he must not have even read it. The trial took place in October 1984 while the accident occurred in January 1977, almost eight years earlier, and plaintiff's inability to remember what he read is understandable. The contention that plaintiff would not have even read an obvious warning is not supported by the evidence.

Next, appellants argue that the warnings here, if inadequate, were not a proximate cause of the injury because plaintiff learned how to use the crawler loader from his employer and fellow workers and not from the manual and instructions which contained the cautionary statements. Thus, it is argued that due to plaintiff's reliance on others to instruct him in the operation of the machine and in getting the "feel" of it and his failure to read the manual, which he didn't even know existed, appellants were relieved of providing an adequate warning, or at least the lack of warning was not the proximate cause of the injuries. Additionally, appellants contend that the cause of plaintiff's injuries, in addition to his own fault, was the result of a superseding cause in that the employer "breached its duty of ordinary care owed its employee which in turn required it to provide safe and suitable tools and machinery, sufficient and capable employees, and instruction concerning the use of tools and machines for their own safety." The foregoing issues on proximate cause were covered in comprehensive jury instructions to which appellants had no objection. The issues were thoroughly tried and argued by both parties during the trial and were appropriately submitted to the jury for determination.

In its determination that appellants failed to provide adequate

warnings, we do not know whether the jury based its decision on the inadequacy of the language used or on the failure to put a warning on the machine where it would be obvious to the operator, or both. Either conclusion is supported by the evidence.

Next, appellants present a number of points in contending their motion for a new trial should have been sustained by the trial court. Many of the points are a rehash of earlier ones raised in their brief and have already been covered herein. One point not covered is appellants' contention the jury's verdict, in its answers to special questions, is inconsistent. The jury found the appellants negligent, in its response to question number three, for failing to provide adequate warnings of hazards and risks involved in the use of the unit equipped with a ROPS without using a seat belt. The jury also found, in question number ten, plaintiff's employer, Power Constructors, negligent for failing to instruct the plaintiff concerning the availability and necessity of using seat belts with the unit equipped with a ROPS. Deere contends these findings are inconsistent. Examination of the record indicates the jury was informed in jury instruction No. 18 that a manufacturer has a duty to warn regarding known dangers from use of its product. Instruction No. 23 explained several duties owed by an employer to its employees including the duty to instruct employees who are in need of such instruction for their own safety. It is argued that before Power Constructors could be negligent in failing to warn plaintiff, it must have had an adequate warning from Deere or it could not be negligent in failing to warn plaintiff. Appellants rely upon *Reed v. Chaffin*, 205 Kan. 815, 473 P.2d 102 (1970), and *Rohr v. Henderson*, 207 Kan. 123, 483 P.2d 1089 (1971), in support of their position. Those cases are clearly distinguishable from the instant cases and the argument lacks merit. Both Deere and Power Constructors could be found negligent in failing to provide sufficient information or warnings to plaintiff and failure on the part of one does not preclude failure on the part of the other.

Finally, it is contended the monetary verdict was excessive, that the jury was influenced by passion and prejudice, that it is not supported by the evidence and that the court erred in excluding evidence on future earnings. As the damage element of the verdict was general, we have no way of knowing what

amount the jury awarded for any particular element of damage, such as loss of future wages or pain and suffering. Plaintiff suffered severe and painful injuries, including an open fracture of the left femur, an open fracture of the left humerus, severe damage to major arteries and veins, and loss of his left bicep muscle. He has undergone three surgeries and at the time of trial faced still further surgery. He also faces an increased risk of future vascular problems. The amount of the verdict does not shock the conscience of the court and is supported by the evidence.

This case was diligently prepared and well tried by conscientious and competent counsel on both sides, who presented all relevant issues to the jury under a comprehensive set of instructions approved by appellants. We have considered all points raised on appeal, whether specifically set forth herein or not, and find no reversible error.

The judgment is affirmed.

SCHROEDER, C.J., dissenting: In my opinion the admitted facts in this case require reversal as a matter of law.

When the parties in this comparative negligence case are viewed in perspective, the real issues presented on appeal become relatively simple and well defined.

The appellants, Deere and Company and John Deere Industrial Equipment Company (Deere), through their local dealer, Capital Equipment, Inc., *sold* the crawler-tractor equipped with a hydraulically controlled bucket loader, *but without a ROPS kit attached*, to Power Constructors, Inc., the plaintiff's immediate employer.

Capital Equipment, Inc., settled out so their liability on appeal to this court is not an issue. Power Constructors, Inc., is covered by workers' compensation *thereby preventing the plaintiff from recovering damages in this action from his employer.*

Therefore, it is only the issues concerning Deere that confront the Supreme Court on appeal.

What was Deere's duty to warn when the crawler-tractor was sold to Power Constructors, Inc., in 1971? It was *not equipped* with a roll-over protective structure (ROPS), nor was it equipped with a seat belt. The warning then, if required, would be that a seat belt should *not* be used in operating the crawler-tractor. Obviously, under this state of the facts, there could be no

negligence concerning warnings at the time of the sale and delivery to the purchaser; and there would be no liability of Deere at any time prior to installation of the ROPS kit, unless the court declares Deere to be an absolute insurer concerning the safety of one operating the machine.

How then in February 1973 can a subsequent sale and delivery of the ROPS kit by Capital Equipment, Inc., to the vendee, the plaintiff's employer—which plaintiff's employer installed—relate negligence back to Deere? Proper instructions for installation and warnings to the plaintiff's employer accompanied the ROPS kit. The fact that the seat belt upon installation may have been hidden from view under the seat of the crawler-tractor cannot be attributed to Deere. This was the act and the sole responsibility of Power Constructors, Inc., the plaintiff's immediate employer. Is the manufacturer required to give immaterial warnings to an eventual user of its equipment in the event alterations are made to the machine by others, long after sale and delivery of the machine? This cannot be the law if reason is to prevail.

The jury found Deere negligent "in failing to provide adequate warnings of hazards and risks involved in the use of the unit equipped with a ROPS without using a seat belt."

Upon the evidence, this finding is absolutely inconsistent with the conceded facts and the controlling law which will be discussed later in my dissenting opinion.

Other matters of law addressed in the court's opinion with which I cannot agree are the following:

First, in a series of automobile cases before the Kansas appellate courts, it has been held the failure to use an available seat belt is not to be considered as negligence when comparing fault. *Rollins v. Kansas Dept. of Transportation*, 238 Kan. 453, 711 P.2d 1330 (1985); *Ratterree v. Bartlett*, 238 Kan. 11, 18, 707 P.2d 1063 (1985), *Hampton v. State Highway Commission*, 209 Kan. 565, 579-81, 498 P.2d 236 (1972), *Taplin v. Clark*, 6 Kan. App. 2d 66, 626 P.2d 1198 (1981). *This is in light of the fact the Kansas legislature requires every passenger car manufactured or assembled, after a certain date, to be equipped with seat belts.* K.S.A. 8-1749. As the subject of seat belts relates to Kansas comparative negligence law, therefore, it is *immaterial* whether a seat belt is provided in an automobile because the driver or

passenger has no legal duty, statutory or at common law, to use a seat belt. *A fortiori*, notice or warning by the manufacturer concerning the use of seat belts is irrelevant.

The court in *Marshall v. Ford Motor Company*, 446 F.2d 712 (10th Cir. 1971), stated the *function of seat belts is a matter of common knowledge*, and the court rejected the plaintiff/passenger's argument that the car manufacturer had a duty to warn of the consequences of non-use of seat belts. If it has been held no duty to warn of non-use of seat belts exists in automobile cases where automobile travel is frequent and at a high rate of speed, how can the majority require such a duty in a case involving a crawler-tractor equipped with a loader where the equipment moves at an extremely slow rate of speed—three to four miles per hour—at a supervised construction site? What is the distinction in the danger involved? Automobiles travel at high rates of speed where the space between vehicles passing in opposite directions is frequently less than two feet. One need only be reminded of the number of highway accidents and the resulting death on our highways to conclude the danger in operating an automobile is far greater than the operation of a crawler-tractor at a very slow rate of speed under supervision at a construction site.

The fact this issue has to do with construction equipment, rather than an automobile, should not alter the applicability of the rationale found in the automobile cases, *i.e., seat belts are commonplace, their function is common knowledge, and there is neither a duty to wear them nor to warn of the consequences in failing to wear them.*

Just as certain cars must be equipped with seat belts, the Occupational Safety and Health Administration (OSHA) requires seat belts to be provided on crawler-tractors equipped with a ROPS. 29 C.F.R. § 1926.602 (1985). And as with automobiles, the user of the equipment has no duty to use an available seat belt. Under this theory it is unnecessary to consider plaintiff's claim that he did not know the seat belt was available. As in the automobile cases, even though a seat belt is required by law, under the doctrine of comparative negligence the availability of a seat belt is immaterial since the plaintiff has no legal duty to use it.

The manufacturers of automobiles and earth-moving equipment can do no more than provide the seat belt required by law.

Whether that seat belt is used depends upon the personal choice of the occupant of the vehicle until the legislature mandates otherwise. It is unjust to penalize the defendant/manufacturer for failing to warn of the necessity to use a seat belt on a crawler-tractor with a ROPS when under the law, even if plaintiff/user had been warned, the plaintiff cannot be penalized under comparative negligence for failing to heed that warning.

Second, the majority refuse to recognize the general rule that there is no duty to warn of dangers actually known by the user of a product. *Jones v. Hittle Service, Inc.*, 219 Kan. 627, 640, 549 P.2d 1383 (1976). See also *Mayberry v. Akron Rubber Machinery Corp.*, 483 F. Supp. 407 (N.D. Okla. 1979) (no duty to warn members of profession against dangers known to members of that profession), 63 Am. Jur. 2d, Products Liability § 341. The following is plaintiff's testimony taken from the trial transcript where he admits he was familiar with seat belts and knew the risks involved in operating the crawler-tractor which is the subject of this action without wearing a seat belt.

"Q. Okay. And you worked for a Morton Building Company in which you operated a Ford tractor?

"A. That's correct.

"Q. With a drilling rig that was attached to it?

"A. And a bucket on the front.

"Q. And that one had a roll-over protective structure; did it not?

"A. There were four crews at Morton Building at the time I worked there. There were several tractors. The old ones did not have, but the newer ones did.

"Q. And they all had seat belts?

"A. As near as I can recall, yes.

"Q. Okay. And, of course, you knew what a seat belt was for by that time; did you not, sir?

"A. Yes.

"Q. And if you saw a seat belt lying someplace, you knew what it was?

"A. Yes.

"Q. And knew how to use it?

"A. Yes.

"*Q. And knew the possible consequences of not using it?*

"*A. Yes.*

"Q. In the event of a tip over or if your—you had by that time, you had them in your own personal vehicle; did you not?

"A. Yes.

"Q. And used them for occupant protection in the event of a crash on the highway?

"A. That's right.

"Q. Or a roll over; is that correct, sir?

"A. Yes.

"Q. Would it be fair to say, then, that by the time that you went to work for Power Constructors, that you were really no stranger to seat belts?

"A. That would be correct.

"Q. You knew exactly what they were for; did you?

"A. Yes.

"Q. And you knew exactly—you had a pretty good idea of what it would prevent?

"A. Yes.

"Q. And you had also a pretty good notion of what risks were involved if you used a vehicle without them?

"A. Yes.

"Q. And the seat belt, itself, just the seeing of it was a type of warning to you to know that it was there and something to be used?

MR. McATEE: Object, Your Honor, that presumes a fact not in evidence.

MR. PATTERSON: Well—

THE COURT: (Interrupting) Well, he is talking about seat belts that he would see, not necessarily a seat belt on the vehicle in question. That's the way I interpret the question.

MR. PATTERSON: That was the question I intended to put. I hope I did.

"Q. (By Mr. Patterson) If you saw a seat belt, you knew what to do?

"A. I would use it, yes.

"Q. Right, And you really wouldn't need a sign or a label to tell you to use it; would you?

"A. Not in the—if I saw it, no.

"Q. If it was there and it was visible and you saw it, you didn't need a label to tell you what to do?

"A. No, sir."

By his own admissions, plaintiff knew of the dangers. These admissions are binding and conclusive upon him if uncontradicted or unexplained. *Hallett v. Stone*, 216 Kan. 568, 575, 534 P.2d 232 (1975); *Cipra v. Seeger*, 215 Kan. 951, 954, 529 P.2d 130 (1974), *Beams v. Werth*, 200 Kan. 532, 547, 438 P.2d 957 (1968); *Thomas v. Kansas City Southern Rly Co.*, 197 Kan. 747, 751, 421 P.2d 51 (1966); *Schoof v. Byrd*, 197 Kan. 38, 49, 415 P.2d 384 (1966); *Bellport v. Harder*, 196 Kan. 294, 300, 411 P.2d 725 (1966); *Reeder v. Guaranteed Foods, Inc.*, 194 Kan. 386, 393, 399 P.2d 822 (1965); *Hiniger v. Judy*, 194 Kan. 155, 165, 398 P.2d 305 (1965).

*Warnings* that a seat belt should be used and the dangers involved for not using seat belts in this case are, therefore, *immaterial as a matter of law.*

Here, the plaintiff revealed he had actual knowledge of the dangers involved if he failed to wear a seat belt. Plaintiff's testimony that he never saw a seat belt neither contradicts nor

explains the admission that he knew the risks. Whether a seat belt is provided, in fact, does not affect one's personal knowledge of what can happen if a seat belt is not worn.

In addition to plaintiff's admissions, the record reveals he was 22 years old at the time of the accident. He had previously operated a loader tractor at Morton Buildings where he was employed for a total of three years. The newer tractors at Morton Buildings were equipped with both a ROPS and seat belts. Plaintiff had been employed by Power Constructors, Inc., the owner of the crawler-tractor, for seven months prior to the accident. Power trained him on the crawler-tractor and he had operated it for four to six weeks. The local union had qualified plaintiff as a "first year operator."

Plaintiff was an experienced and qualified user of a ROPS equipped crawler-tractor and admitted he knew the dangers of failure to wear a seat belt. The manufacturer has no duty to warn under these circumstances.

Finally, assuming arguendo that defendant had a duty to warn of the necessity to wear a seat belt in a ROPS equipped crawler-tractor, that duty was satisfied here when a warning was given to the purchaser of the equipment, Power Constructors, Inc., plaintiff's employer.

When Power Constructors, Inc., initially bought the crawler-tractor, it was not equipped with a ROPS or a seat belt. The Operator's Manual Deere provided contained the following warning:

"CAUTION: Under almost all operating conditions:

1. The use of a seat belt with the optional John Deere Canopy is recommended.

2. Use of a seat belt without roll-over protective equipment is not recommended."

Later, Power Constructors, Inc., purchased from Capital Equipment, Inc., a ROPS kit complete with a seat belt. Upon delivery of the ROPS kit to Power Constructors, Inc., the shop foreman, an employee of Power, installed the ROPS and seat belt assembly on the crawler-tractor. The installation instructions accompanying the kit contained the same warning as found in the operator's manual and the seat belt provided the following warning:

"CAUTION: Under almost all operating conditions, belt should not be used on tractor which is not equipped with roll-over protection."

The Supreme Court held in *Younger v. Dow Corning Corporation*, 202 Kan. 674, 682, 451 P.2d 177 (1969), the manufacturer of a potentially hazardous product who gives an adequate warning to the immediate vendee, *an industrial user* of the product, has no additional duties to warn the vendee's employee of any dangers and is not liable to the employee in a negligence action for failure to do so.

The three different warnings provided by defendant to plaintiff's employer were adequate in this case. Taking into consideration the various different terrains encountered on job sites where the equipment could be used, the warnings were not vague. It is simply too burdensome to require the manufacturer to warn of every potential hazard when the purchaser/employer is in a superior position to establish safety guidelines relevant to a particular construction site. It cannot be overemphasized the warning concerns the use of *seat belts, commonplace safety equipment.*

Safety standards for the construction industry under OSHA are set forth in Title 29, Part 1926 of the Code of Federal Regulations. An *employer* has a duty to provide his employees with a safe working environment. 29 U.S.C. § 654 (1982). Furthermore, the *employer* shall instruct each employee in the recognition and avoidance of unsafe conditions. 29 C.F.R. § 1926.21 (1985). And of utmost importance, the *employer* is responsible for requiring appropriate personal protective equipment to be worn where there is exposure to hazardous conditions or where the use of the equipment reduces the hazards. 29 C.F.R. § 1926.28 (1985).

The majority today cast the manufacturer in the role of insurer by requiring the manufacturer to warn an employee of the purchaser of the necessity to wear a seat belt when operating a crawler-tractor with a ROPS, when that responsibility should be shouldered by the purchaser-employer, who is in the best position to eliminate any possible dangers, who has trained the employee, and who supervises the employee on a daily basis. In particular, on the facts in this case it was *the plaintiff's immediate employer* that purchased the ROPS kit, installed it two years after the purchase of the crawler-tractor *and it was the plaintiff's employer that hid the seat belt from plaintiff's view.*

The fact that the plaintiff must be satisfied with workers' compensation from his employer, as limited by statute, for the injuries occasioned in the performance of his work should not affect the decision in this case.

It is respectfully submitted the judgment of the lower court against Deere should be reversed.

MILLER, J., joins the foregoing dissenting opinion.